# JANUARY TERM, 1891.*

JAN SCHMEDDING v. WILLIAM MAY, COUNTY CLERK OF
WAYNE COUNTY.

*Public officers—Court files—Inspection.*[1]

Parties to suits in court may, *under the direction of the court*, lawfully withhold the records and papers in the case, and prevent any statement in regard thereto being made public until they are made public by the consent of the parties, or by proceedings in open court.[2]

*Mandamus.* Submitted January 20, 1891. Denied February 27, 1891.

Relator applied for *mandamus* to compel respondent to submit to him for inspection certain books, records, and files in his office. The facts are stated in the opinion.

*William Look* and *H. F. Chipman,* for relator.

*Wisner, Speed & Harvey,* for respondent.

GRANT, J. The relator is a newspaper reporter for the Detroit Abend Post, a daily newspaper published in the city of Detroit. He prays in this proceeding for the writ of *mandamus* to compel the respondent to submit to him

---

* Continued from Vol. 84.
[1] For full digest of points decided, see *Table of Cases Reported.*
[2] See *Park v. Free Press Co.,* 72 Mich. 560.

for inspection certain books, records, and files hereinafter specified.

The petition, after setting forth the occupation of relator, the character and business of said newspaper, and the statement that it has been customary to publish in its columns the records and proceedings of the courts of said county, contains the following:

"Your petitioner further says it is the purpose and policy of said daily Detroit Abend Post, and its business, to disseminate and publish useful information and news among the people, citizens, and residents of the city of Detroit, county of Wayne, and State of Michigan, and to publish such matters relating to the current events of the day which happen, as well in the city of Detroit as in all parts of the world, as are demanded by public curiosity, taste, and business; and it is further the purpose and intention and the policy of said daily Detroit Abend Post to publish, in brief narrative form, all and the whole of the proceedings and causes commenced and pending in the courts of the said county of Wayne, so far as the same is revealed by the files, records, proceedings, and sittings of said court, in an impartial and just manner, without desire or intention to injure, or in any manner to prejudice, the rights of litigants, or to express opinions upon the merits of the matters in controversy between such litigants, and thereby jeopardize, or in any manner impair, the rights of parties to said causes, or to attempt to influence the decrees or judgments of said court, or the verdicts or decisions of the juries impaneled in said causes, or to prevent, influence, compel, or hinder in any manner whatsoever a fair and impartial trial of any or all of the matters and things in controversy and being litigated in any cause brought before the courts of said county; and it is also the purpose of said daily Detroit Abend Post to give publicity in all legal proceedings, so far as that object can be obtained without injustice or injury to the parties immediately concerned, and at the same time to present to the public, as fully as they are presented in court, the material portions of such proceedings, and not conclusions drawn from the files, records, proceedings, and trials of causes and suits

in said courts for the county of Wayne and said county clerk's office; and also to inform litigants, witnesses, and suitors of the course and stages of proceedings and trials in said courts for the county of Wayne, and of the commencement of suits, and of the names of the parties thereto, and the grounds upon which the same are brought."

The petition then alleges that the respondent is the custodian of the records, files, and books of said court; that it was the duty of the respondent to furnish the relator proper and reasonable facilities for the inspection and examination thereof; that among the books so in the custody of the respondent is an "Entry Book," containing the date of, file number, and title of each and every suit brought in said court; that, upon an examination of said book, relator found the following: "Jan. 5, 1891. 11,572.    Suppressed;" that he applied to respondent to show him the files in said suit and the calendar, but that respondent refused to do so, and would not permit relator to see and examine the records and files in said cause, or the calendar entries therein.    It is unnecessary to state here the other allegations in the petition.    The prayer of the petition is that respondent furnish relator the following:

1. Proper and reasonable facilities for the examination of the record and files in said cause, so that he may make *memoranda* or transcripts therefrom:
2. The papers filed in said cause.
3. The files and records in said cause.
4. The books containing a record of the entries in said cause.
5. The calendar, that he may inspect the entries made therein in said cause.

The respondent admits the material facts charged in said petition, and further returns that said cause No. 11,572 was commenced by the filing of a bill of complaint, which complainant's solicitor, at the time of filing,

requested to be suppressed, meaning thereby that respondent would not permit the newspaper reporters to have access thereto. The petition alleges a similar state of facts in regard to suit No. 11,439. As to this the respondent makes a similar return as above, with the further allegation that an order was subsequently made by one of the judges of the court, by which the complainant's solicitor was permitted to take the bill from the files, and had the same in his possession when the order to show cause was served. He further returns that for some time it has been the practice, when requested by the complainant or his solicitors, to exclude the newspaper reporters from any examination of, inspection, or from any information in relation to bills filled before answers, or proceedings taken thereon in open court, so as to make their contents known through such proceedings. The question is therefore fairly presented, have parties the right to an examination of the records and papers in a cause for the purpose of publishing statements in regard thereto in the newspapers, before trial or hearing, or before they become public by proceedings taken in open court?

The relator bases his right upon Act No. 205, Laws of 1889, which provides for examination and inspection by all persons for lawful purposes of any "county, city, or town records." Whether the term "county records" includes the records of the circuit court of the county, *quære*. That question is not necessarily before us, and has not been argued by counsel. The distinction appears to have been recognized in *Cowley v. Pulsifer*, 137 Mass. 392.

After a public trial or hearing, and a final determination, of a cause entered upon the journal of the court, no one would probably question the right of any person to inspect that record, and publish the result. Such record has undoubtedly then become a public one. The

publication of the judgment or decree is privileged, and affords no basis for an action of libel. This is clearly not so where one publishes the statements or charges made in the pleadings, and before their truthfulness has been determined by the judgment or decree of the court. In this country, courts are open to the public. It is said in *Cowley v. Pulsifer*, 137 Mass. 392:

"It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." (An able discussion of the question here involved will be found in this case.)

But this publicity does not extend to nor include the papers filed in the case necessary to frame the issue to be tried, nor to the entries thereof made by the clerk. Such papers are usually filed and the entries made out of court. They are not proceedings in open court. These suits involve private dealings between private parties. The public are not interested to know the nature of these disputes, except it be from the feeling of idle curiosity.

But it is said that the creditors of a defendant, and those to whom he may apply for credit, are interested to know that he has been sued, and they may obtain this information through the public prints. I fail to see where there is an inherent right to publish even the fact that a man has been sued, for the purpose of warning others, and thus affect his financial standing. The claim on which suit is brought may be wholly unfounded. If the object be to obtain and publish the charges set forth in a bill for divorce, certainly the public are not interested, and their interests would undoubtedly be well

subserved if the contents thereof were never published. These suits, involving private transactions, may never come to trial or hearing. The troubles may be settled, and the charges withdrawn. In such cases there can be no objection to the papers remaining under the control of the court and the parties until such time as they choose to make them public by proceedings in open court, or otherwise. The rule was well stated by the solicitor general in 1683 in the *quo warranto* case against the City of London, 3 Harg. State Tr. 553:

"It is unlawful to print a man's private case while it is pending in any court of judicature, before it comes to judgment, because it is an appeal to the people; and that was my Lord Chief Justice Hale's opinion in Col. King's case."

One very potent reason why these cases should not be published is that in the multiplicity of morning, afternoon, and evening newspapers a party sued may learn the fact within a short time, and avoid the service of process by leaving the jurisdiction of the court. The authorities cited by the relator in support of his position are not, in my judgment, in point, because they involve the right to examine the records in the offices of the registers of deeds, or of those officers having charge of such records, and are decided upon the provisions of the statute law applicable to each case, except in one case, which involved the right of an individual to remain in a public office from idle curiosity while he was not interfering with the transaction of the business of the office. *O'Hara v. King*, 52 Ill. 303.

The granting of the writ being discretionary, and the sole object of the relator being to obtain for publication information in regard to suits which have just been commenced, and which the parties desired to keep from publication for the time being, and have been permitted to

do so by the court, we do not think a case has been made requiring the granting of the writ, even if the relator had a strict legal right to the information sought.

But, aside from this, our conclusion is that the parties to suits in court may, under the direction of the court, lawfully withhold the records and papers in the case, and prevent any statement in regard thereto being made public until they are made public by the consent of the parties, or by proceedings in open court.

The respondent was evidently acting under such direction, and the writ must be denied, with costs.

The other Justices concurred.