*In re* MIDLAND PUBLISHING COMPANY, INC

Docket No. 68862. Argued January 4, 1984 (Calendar No. 4).—Decided
December 28, 1984. Released January 9, 1985.

Midland Publishing Company, Inc., brought an action for superin-
tending control in the Midland Circuit Court against a judge of
the 75th Judicial District Court, seeking to have vacated orders
by the judge suppressing the files in certain criminal sexual
conduct cases issued under the authority of the Penal Code
permitting suppression of the names of the victim or the actor
and details of the offense during the preliminary examination;
to enjoin the judge from continuing the suppression orders and
from entering similar orders in the future; and to have the
statute declared unconstitutional as permitting a prior re-
straint upon publication. The court, David S. DeWitt, J., dis-
missed the complaint, finding that the statute did not and could
not prohibit the plaintiff from publishing the information it
had acquired concerning the criminal matters and thus was not
a prior restraint and that neither the press nor the public had
a federal or state constitutional right of access to probable
cause proceedings. The Court of Appeals, Bashara and Mac-
Kenzie, JJ. (Beasley, P.J., dissenting), affirmed (Docket No.
53934). The plaintiff appeals.

In a unanimous opinion by Justice Cavanagh, the Supreme
Court *held:*

The statute does not constitute a restraint against publica-
tion, and it contemplates no sanctions against non-parties
publishing information, no matter how acquired. A preliminary
examination is not a part of trial, and the public has no
common-law or constitutional rights of access to that proceed-

REFERENCES FOR POINTS IN HEADNOTES
[1-6] 20 Am Jur 2d, Courts §§ 61, 62.
    58 Am Jur 2d, Newspapers, Periodicals, and Press Associations
    § 25.
    62 Am Jur 2d, Privacy § 32.
    66 Am Jur 2d, Records and Recording Laws §§ 27, 36, 41.
    Propriety of publishing identity of sexual assault victim. 86 ALR3d
    80.
    Restricting public access to judicial records of state courts. 84
    ALR3d 598.

ing. Suppression of a court file containing the name of a victim of criminal sexual conduct, the name of the defendant, and the details of the offense until the defendant is arraigned, the charge is dismissed, or the case is otherwise concluded is not a prior restraint upon publication, but a valid legislative restriction on the common-law right of access to public records and the statutory right of access to court proceedings.

1. A suppression order is a direction to court personnel to prevent public disclosure of official files. Files in criminal proceedings were considered public records at common law and there is a common-law right of access in the public. However, the Legislature can restrict the right. The Legislature may also restrict the statutory right of access provided by the Revised Judicature Act to all courtroom proceedings. The section of the Penal Code which permits suppression of the name of the victim of criminal sexual conduct, the actor, and the details of the offense until the actor is arraigned, the charge is dismissed, or the case is otherwise concluded is a valid restriction on the right of access to public records, and, because it is more specific than and was enacted subsequent to the Revised Judicature Act, it is by implication a valid restriction on the right of access to court proceedings.

2. The public does not have a constitutional right of access to preliminary examinations. The public enjoyed no common-law right of access to proceedings to determine probable cause. The access to criminal proceedings provided by the federal and the state constitutions is access to criminal *trials.* The nature of proceedings employed to determine probable cause traditionally has been subject to legislative enactment. The Penal Code directs that in cases such as this case court files may be withheld from the public and implies that preliminary examinations in the cases be closed to the public. The restrictions are valid under federal and state law.

Affirmed.

113 Mich App 55; 317 NW2d 284 (1982) affirmed.

1. CONSTITUTIONAL LAW — FIRST AMENDMENT — PRIOR RESTRAINT — CRIMINAL SEXUAL CONDUCT — PRELIMINARY EXAMINATIONS — SUPPRESSION.

The part of the criminal sexual conduct statute authorizing a magistrate to suppress the name of the victim of criminal sexual conduct, the name of the actor, and the details of the offense until the actor is arraigned on the information, the charge is dismissed, or the case is otherwise concluded contemplates no sanctions against non-parties publishing information, no matter how acquired, and is therefore not a prior restraint

on publication (US Const, Ams I, XIV; Const 1963, art 1, § 5; MCL 750.520k; MSA 28.788[11]).

2. Courts — Records — Right of Access — Restrictions — Statutes — Criminal Sexual Conduct.

The common-law right of access to public records, including the files in criminal proceedings, may be restricted by the Legislature; the authorization in the criminal sexual conduct statute for suppression of the files in certain cases until arraignment on the information or other disposition is a valid restriction on the right of access (MCL 750.520k; MSA 28.788[11]).

3. Pretrial Procedure — Preliminary Examinations — Right of Access — Public.

The preliminary examination is not a part of trial, and the public has no common-law or constitutional rights of access to that proceeding; the statutory right of access may be validly restricted.

4. Pretrial Procedure — Right of Access — Press.

The press has no greater right of access to pretrial proceedings than does the public generally.

5. Pretrial Procedure — Criminal Sexual Conduct — Preliminary Examinations — Suppression — Prior Restraint.

The statute authorizing suppression of a court file containing the name of a victim of criminal sexual conduct, the name of the defendant, and the details of the offense until the defendant is arraigned, the charge is dismissed, or the case is otherwise concluded is not a prior restraint upon publication, but a valid legislative restriction on the common-law right of access to public records and the statutory right of access to court proceedings (US Const, Ams I, VI, XIV; Const 1963, art 1, §§ 5, 20; MCL 600.1420, 750.520k; MSA 27A.1420, 28.788[11]).

6. Pretrial Procedure — Criminal Sexual Conduct — Preliminary Examinations — Suppression.

The statutory authority to suppress the name of a victim of criminal sexual conduct, the name of the actor, and the details of the offense until the actor is arraigned, the charge is dismissed, or the case is otherwise concluded permits restriction of access to court files and, by implication, access to preliminary examinations, and is valid under state and federal law (US Const, Ams I, VI, XIV; Const 1963, art 1, §§ 5, 20; MCL 600.1420, 750.520k; MSA 27A.1420, 28.788[11]).

*Law Offices of Herbert H. Edwards, P.C.* (by *Herbert H. Edwards),* for the plaintiff.

*Doyle A. Rowland* for the defendant.

Amicus Curiae:

*Keywell & Rosenfeld* (by *Dawn L. Phillips, Christine E. Moore,* and *Richard E. Segal*) for Michigan Press Association.

CAVANAGH, J. Defendant, pursuant to MCL 750.520k; MSA 28.788(11), issued suppression orders in two criminal cases. Upon plaintiff's complaint for an order of superintending control, the circuit court found the statute constitutional, thereby dismissing plaintiff's complaint, and the Court of Appeals affirmed.[1] We granted leave to appeal in order to determine whether MCL 750.520k; MSA 28.788(11) is constitutional.

## I. FACTS

On July 21, 1980, complaints and arrest warrants for three persons were issued in two unrelated matters involving alleged first-degree criminal sexual conduct with child victims. The arrests were effected and, on July 23, 1980, defendant, pursuant to MCL 750.520k; MSA 28.788(11), entered suppression orders in the two cases.[2] That same day, plaintiff, which publishes the only daily

---

[1] 113 Mich App 55; 317 NW2d 284 (1982).

[2] The nature of these proceedings necessarily makes the underlying facts unclear. However, it does appear that the suppression orders were entered upon motions of the defendants in the two criminal actions and that the orders merely directed "that the file in the captioned matter be and the same is hereby suppressed." The parties also seem to agree that sometime on July 23, 1980, plaintiff learned of the suppression orders upon inquiry to the district court. Nevertheless, the substance of the information gained from that inquiry and the effect of the orders is disputed. Plaintiff claims to have been informed that publication of any information pertaining to the two criminal cases, regardless of its source, might result in it being in contempt of court. Conversely, defendant claims that he never presumed to be able to prevent plaintiff from publishing information

newspaper in Midland County, The Midland Daily
News, filed a complaint for an order of superin-
tending control in the circuit court alleging that:
(1) it knew the identities of the three persons and
some of the details of the alleged offenses, (2) its
information was obtained from sources other than
the district court's files, and (3) the suppression
orders constituted an unconstitutional prior re-
straint on publication. Accordingly, plaintiff
sought: (1) to enjoin defendant from continuing the
two suppression orders and from entering similar
orders in the future, (2) to have the suppression
orders vacated, and (3) to have MCL 750.520k;
MSA 28.788(11) declared unconstitutional.[3] There-
after, on July 24, 1980, the circuit court issued an
order to the defendant to show cause why an order
of superintending control vacating the suppression

regarding the two matters and that plaintiff was never threatened
with contempt of court if it did so. Obviously, this dispute is irrele-
vant to determination of the issues involved. Rather, it is the sub-
stance of the orders themselves and interpretation of the pertinent
statute which are important. This will be discussed when analyzing
the merits of plaintiff's claims.

Finally, it appears undisputed that the defendants in the two
criminal actions were arraigned on informations on August 1, 1980.
Although the issues presented in this appeal thus appear moot, this
Court will consider them because they are of public significance and
are likely to recur, yet may evade judicial review. *Globe Newspaper
Co v Superior Court for the County of Norfolk,* 457 US 596, 602-603;
102 S Ct 2613; 73 L Ed 2d 248 (1982); *Richmond Newspapers, Inc v
Virginia,* 448 US 555, 563; 100 S Ct 2814; 65 L Ed 2d 973 (1980);
*Gannett Co, Inc v DePasquale,* 443 US 368, 377-378; 99 S Ct 2898; 61
L Ed 2d 608 (1979); *Nebraska Press Ass'n v Stuart,* 427 US 539, 546-
547; 96 S Ct 2791; 49 L Ed 2d 683 (1976); *Milford v People's Commu-
nity Hospital Authority,* 380 Mich 49, 55-56; 155 NW2d 835 (1968);
*Lafayette Dramatic Productions, Inc v Ferentz,* 305 Mich 193, 218; 9
NW2d 57 (1943); *Whitman v Mercy-Memorial Hospital,* 128 Mich App
155, 158; 339 NW2d 730 (1983); *Colombini v Dep't of Social Services,*
93 Mich App 157, 161-162; 286 NW2d 77 (1979); *Capitol Cities Broad-
casting Corp v Tenth Dist Judge,* 91 Mich App 655, 657; 283 NW2d
779 (1979).

[3] Although we intimate no view as to the propriety of injunctive
relief, it is clear from plaintiff's subsequent actions that it sought an
order of superintending control, pursuant to GCR 1963, 710-711,
vacating the suppression orders, premised upon a finding that MCL
750.520k; MSA 28.788(11) was unconstitutional.

orders should not issue. A hearing was held on August 4, 1980, and the circuit court issued its opinion the next day.

In its opinion, the circuit court found: (1) that MCL 750.520k; MSA 28.788(11) did not constitute a prior restraint, *i.e.,* it did not and could not prohibit plaintiff from publishing information which it had concerning the two criminal matters,[4] and (2) that neither the public nor the press possessed federal or state constitutional rights of access to probable cause proceedings.[5] Accordingly,

[4] See *post,* p 157.

[5] "The latest decisions of the United States Supreme Court concerning the right of the press or the public to access are *Gannett Co, Inc v DePasquale* [fn 2 *supra*]—this case involved a pretrial suppression hearing, and *Richmond Newspapers v Virginia* [fn 2 *supra*]—this case involved the right of the public and the press to attend a criminal trial.

"*Gannett* held that there was no constitutional right of the public or the press to attend pretrial hearings. Dissenting justices did not disagree with the majority conclusion that certain pretrial proceedings could be closed without doing violence to the constitutional rights of the press. Both the majority and dissenting justices agreed probable cause hearings such as the preliminary examination could be closed. Justice Blackmun, writing for the minority, said,

" 'The fact that such proceedings might have been held in private at common law in England or in this country does not detract from my conclusion that pretrial suppression hearings should not be, any more than does the fact that grand juries—or preliminary proceedings such as coroner's inquests at common law—were and are secret.' [443 US 437.]

"It is clear that the *Gannett* court, both majority and minority, found no constitutional provision requiring proceedings to be open to the public or press during the phase of the case in which probable cause is determined.

"Turning to the *Richmond Newspapers,* this case involved solely the right of the public and the press to attend the *trial* of a criminal case. Much of the ringing language of the court's opinion in this case is set forth in complainant's brief. Unfortunately, the Supreme Court's entire attention was devoted to access to the trial portion of the criminal justice process. The case is not authority establishing a constitutional right of access by either the press or the public to that phase of the proceedings in which probable cause is determined. A close reading of the case indicates that even the right to public and press access to the trial portion of a criminal case is not an absolute right and might be subject to some restrictions. Justice Potter Stew-

the circuit court ordered that plaintiff's complaint. be dismissed, and the Court of Appeals affirmed that dismissal.

The Court of Appeals majority found: (1) that there was no prior restraint violative of US Const, Ams I, XIV or Const 1963, art 1, § 5; (2) that the public does not have constitutional rights, under US Const, Ams I, VI or Const 1963, art 1, § 20, of access to pretrial proceedings; and (3) that there is no constitutional right to inspect public records, but only a common-law right which the Legislature may restrict. *In re Midland Publishing Co, Inc,* 113 Mich App 55, 57-64; 317 NW2d 284 (1982). Conversely, the dissent would have held: (1) that US Const, Am VI and Const 1963, art 1, § 20 require public criminal trials; (2) that it was unnecessary to decide whether the statute constituted an unconstitutional prior restraint; (3) because the preliminary examination is part of the trial, *i.e.,* it must be open to the public; and (4) thus, the statute was unconstitutional.

We granted leave to appeal on June 28, 1983.[6]

## II. Issues

In this Court, plaintiff continues to claim that MCL 750.520k; MSA 28.788(11) is an unconstitutional prior restraint on publication, even as interpreted by the circuit court and the Court of Ap-

art, concurring in the judgment of the court, indicates that 'the sensibilities of a youthful prosecution witness, for example, might justify similar exclusion in a criminal *trial* for rape * * *' [448 US 600, fn 5] (emphasis supplied). This court is reluctant to hold the statute unconstitutional absent Michigan or United States appellate decisions pointing toward extension of a constitutionally protected right of access to include probable cause proceedings. Neither *Gannett* nor *Richmond Newspapers* does this. Perhaps Michigan appellate courts will do so in the future. We hold, at this time, that section 520k does not infringe upon First, Sixth, or Fourteenth Amendment rights of the complainant."

[6] 417 Mich 1041 (1983).

peals, and abridges constitutional rights of access to pretrial proceedings.[7]

## A. *Prior Restraint*
MCL 750.520k; MSA 28.788(11) provides:

"Upon the request of the counsel or the victim or actor in a prosecution under sections 520b to 520g the magistrate before whom any person is brought on a charge of having committed an offense under sections 520b to 520g shall order that the names of the victim and actor and details of the alleged offense be sup-

[7] Apparently, plaintiff has abandoned its claim of a constitutional right to inspect public records, and we need not address it. However, we note with approval the analysis of the Court of Appeals majority:

"There is no authority establishing a constitutional right to inspect public records. Plaintiff relies on *Cox Broadcasting Co v Cohn,* 420 US 469, 496-497; 95 S Ct 1029; 43 L Ed 2d 328 (1975). However, in *Cox,* Cox Broadcasting and one of its reporters were sued for disclosing the identity of a minor rape victim. The identity was obtained from court records open to the public. The Court held:

" 'Appellee has not contended that the name was obtained in an improper fashion *or that it was not on an official court document open to public inspection.* Under these circumstances, the protection of freedom of the press provided by the First and Fourteenth Amendments bars the State of Georgia from making appellants' broadcast the basis of civil liability.' (Emphasis added.)

"Plaintiff also relies upon *Nixon v Warner Communications, Inc,* 435 US 589; 98 S Ct 1306; 55 L Ed 2d 570 (1978). In *Nixon,* the Court pointed out that the courts of this country have generally recognized a *common-law* right to inspect and copy public records, including judicial records. The Court recognized that the common-law right was not absolute, and noted that in the case before it the right had been modified by the Presidential Recordings and Materials Preservation Act, note following 44 USC 2107. The Court held that neither the First Amendment guaranty of freedom of the press nor the Sixth Amendment guaranty of a public trial required that the press be given access to presidential tapes which had been admitted in evidence at a criminal trial.

"Michigan has long recognized a common-law right to access to public records. *Burton v Tuite,* 78 Mich 363; 44 NW 282 (1889); *Nowack v Auditor General,* 243 Mich 200; 219 NW 749 (1928). However, since a common-law right rather than a constitutional right is involved, the Legislature may restrict the general broad right of access to public records. See *Booth Newspapers, Inc v Muskegon Probate Judge,* 15 Mich App 203; 166 NW2d 546 (1968)." *Midland Publishing Co, supra,* pp 62-64.

We also note that the press has no greater right of access to public records than does the public generally.

pressed until such time as the actor is arraigned on the information, the charge is dismissed, or the case is otherwise concluded, whichever occurs first."

Sections 520b to 520g codify various types of criminal sexual conduct and the attendant penalties. MCL 750.520b-750.520g; MSA 28.788(2)-28.788(7).

The Court of Appeals majority found that:

"Freedom of speech and of the press are guaranteed by federal and state constitutional provisions. US Const, Ams I, XIV; Const 1963, art 1, § 5. As prior restraints on publication are the most serious and least tolerable infringement of First Amendment rights, the party seeking to justify a prior restraint must overcome a heavy presumption of unconstitutionality. *Near v Minnesota ex rel Olson*, 283. US 697; 51 S Ct 625; 75 L Ed 1357 (1931); *Nebraska Press Ass'n v Stuart*, 427 US 539; 96 S Ct 2791; 49 L Ed 2d 683 (1976).

"In *WXYZ, Inc v Hand*, 463 F Supp 1070 (ED Mich, 1979) *[aff'd* 658 F2d 420 (CA 6, 1981)], the federal court held that orders issued pursuant to the statute at issue here were void as prior restraints. However, in that case the defendant district judge announced that his suppression orders applied to news media personnel as well as to others, and would have taken steps to determine if the news commentators involved were in contempt of court if the federal action had not intervened. To the contrary, in the instant case, the circuit judge held:

" 'If § 520k were construed as the publisher fears, it would certainly constitute a prior restraint upon a publication and would, in this court's opinion, be clearly in violation of the First Amendment rights of the complainant. An examination of the statute, however, discloses no express authorization to the 'magistrate before whom any person is brought' to enforce the suppression order authorized by the section against persons not party to the proceedings, nor served with a copy of the order.

" 'The suppression of names and details concerning pending litigation is not new to the jurisprudence of the

State of Michigan. Whether the practice is commendable or not, it has existed since long prior to this century. See *Jan Schmedding v County Clerk of Wayne County,* 85 Mich 1 [48 NW 201] (1891). A suppression order, as the term is commonly understood in the State of Michigan, contemplates only a direction to the court personnel to prevent public disclosure of the official files. The terms of the statute make it clear that the statutory suppression order would also require the closing of the preliminary examination to the public and the press, since the first event upon which the termination of this suppression order is conditioned is the arraignment on the information, unless the case is concluded without bind-over to the circuit court.

" 'So construed, the statute does not constitute a restraint against publication, since it contemplates no sanctions against non-parties publishing information, no matter how acquired. It is a fundamental rule of statutory interpretation that where two constructions are possible, one constitutional and one unconstitutional, the constitutional construction should be adopted. The judges of the 75th Judicial District have, through their attorney, claimed no power to gag or discipline the press, and have, in fact, acknowledged that the statute confers no such power upon them.'

"We agree with the circuit judge's construction of the statute. So construed, the statute poses no prior restraint problem. See *Gannett Co v DePasquale,* 443 US 368, 393, fn 25; 99 S Ct 2898; 61 L Ed 2d 608 (1979):

" 'This Court's decision in *Nebraska Press Ass'n v Stuart,* 427 US 539 [96 S Ct 2791; 49 L Ed 2d 683 (1976)], is of no assistance to the petitioners in this case. The *Nebraska Press* case involved a direct prior restraint imposed by a trial judge on the members of the press, prohibiting them from disseminating information about a criminal trial. Since "it has been generally, if not universally, considered that it is the chief purpose of the [First Amendment's] guaranty to prevent previous restraints upon publication," *Near v Minnesota ex rel Olson,* 283 US 697, 713 [51 S Ct 625; 75 L Ed 1357 (1931)], the Court held that the order violated the constitutional guarantee of a free press. See also *Oklahoma Publishing Co v District Court,* 430 US 308 [97 S

Ct 1045; 51 L Ed 2d 355 (1977)]. The exclusion order in the present case, by contrast, did not prevent the petitioner from publishing any information in its possession. The proper inquiry, therefore, is whether the petitioner was denied any constitutional right of access.' " *Midland Publishing Co, supra,* pp 58-60.

We endorse the analysis of the Court of Appeals majority. Obviously, the statute so interpreted does not by any stretch of the imagination constitute an unlawful prior restraint on publication by plaintiff.[8] Indeed, as is clearly implied by the term, a prior restraint is "that [which] prohibit[s] the publication or broadcast of particular information or commentary * * * that [which] impose[s] a 'previous' or 'prior' restraint on speech." *Nebraska Press Ass'n v Stuart, supra,* p 556. However, the statute, by its explicit terms, imposes no restraints on any person. Rather, for an event-terminable time, it directs that the "names of the victim[9] and actor[10] and details of the alleged offense be suppressed."

---

[8] As stated by this Court in another case involving suppression of a court file:

"The silence imposed did not and could not extend beyond the secrecy ordered. That secrecy remained unbroken by defendants. No silence upon the right of free speech or freedom of the press was or could be imposed if the subject-matter was obtained from any source outside of the court records. To hold otherwise would violate rights guaranteed to a free people.

"It may be held that the court had control over its records and the publicity thereof until service of process or judicial action, although this should be sparingly exercised and only to ends commensurate with justifiable needs, but this power cannot be extended to curtailment of free speech or of the press upon information *aliunde* the records suppressed.

"The case does not call for a dissertation upon the freedom of the press, and we decline to 'carry coals to Newcastle.' " *In re Times Publishing Co,* 276 Mich 349, 350; 267 NW 858 (1936).

[9] As defined by MCL 750.520a(i); MSA 28.788(1)(i), " '[v]ictim' means the person alleging to have been subjected to criminal sexual conduct."

[10] As defined by MCL 750.520a(a); MSA 28.788(1)(a), " '[a]ctor' means a person accused of criminal sexual conduct."

B. *Rights of Access to Court Records*

The circuit judge correctly noted that "[a] suppression order, as the term is commonly understood in the State of Michigan, contemplates only a direction to the court personnel to prevent public disclosure of the official files." Typically, a file ordered to be suppressed is "sealed in an envelope with public access thereto prevented." *In re Times Publishing Co,* 276 Mich 349, 350; 267 NW 858 (1936). This procedure, at least in civil cases, has a long history in this state. See, *e.g., Times Publishing Co, supra; Burton v Reynolds,* 110 Mich 354, 355-356; 68 NW 217 (1896); *Schmedding v County Clerk of Wayne County,* 85 Mich 1, 4-7; 48 NW 201 (1891); *Park v The Detroit Free Press Co,* 72 Mich 560, 568-569; 40 NW 731 (1888). The foregoing cases were premised on reasoning that pleadings in private actions were not public records and that the dispute did not become public until proceedings were held in open court.[11] Nevertheless, suppression orders are permissible in criminal actions. Although the files in criminal proceedings were apparently considered public records at common law and although there is a common-law right of access to public records, the Legislature can restrict that right.[12] Consequently, MCL 750.520k; MSA 28.788(11) is a valid restriction on that right.[13]

[11] Note that, generally, MCL 600.1420; MSA 27A.1420 requires that "[t]he sittings of every court within this state shall be public." This requirement has been in effect since 1846. See RS 1846, ch 96, § 17; 1857 CL 4063; 1871 CL 5676; How Stat 7244; 1897 CL 1108; 1915 PA 314, ch IV, § 6; 1915 CL 12252-12253; 1929 CL 13886-13887; 1948 CL 604.5-604.6, as amended by 1961 PA 236, § 1420.

[12] See fn 7 *supra.* Also, note that the Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.,* does not apply to the judiciary. MCL 15.232(b)(v), (c), 15.233(1), (2); MSA 4.1801(2)(b)(v), (c), 4.1801(3)(1), (2).

[13] As a practical matter, the suppression contemplated by MCL 750.520k; MSA 28.788(11) and by the orders entered in this case implicitly requires the closing of the preliminary examination to the

## C. *Rights of Access to Proceedings*

The Court of Appeals majority analyzed this issue as follows:

"The existence of a constitutional right of access to trials was considered by the United States Supreme Court in *Gannett* and in *Richmond Newspapers, Inc v Virginia,* 448 US 555; 100 S Ct 2814; 65 L Ed 2d 973 (1980). *Gannett* involved a pretrial hearing on a motion to suppress certain evidence; however, much of the reasoning in the majority opinion by Justice Stewart was based on considerations applicable to trials. The Court held that members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials, even though open trials were the norm under common law. The Court noted in passing that the public had no right to attend pretrial proceedings under common law. The Court declined to decide whether the First and Fourteenth Amendments created a constitutional right to attend trials. Instead, the Court held that, assuming *arguendo* that such a right existed, it was not violated where denial of access was not absolute but temporary, members of the public were given an opportunity to object to closure of the proceedings, and the trial court concluded that the potential prejudice to defendant's constitutional right to

public and a restraint on the actor, the victim, counsel, and court personnel. The former will be discussed in the next section. The latter, although plaintiff can raise the First Amendment rights of third parties, see, generally, *Young v American Mini Theatres, Inc,* 427 US 50, 58-61; 96 S Ct 2440; 49 L Ed 2d 310 (1976), *reh den* 429 US 873; 97 S Ct 191; 50 L Ed 2d 155 (1976); *Broadrick v Oklahoma,* 413 US 601, 610-615; 93 S Ct 2908; 37 L Ed 2d 830 (1973), is not a problem in this case. Indeed, "gag" orders directed to such persons are permissible. *Nebraska Press Ass'n, supra,* pp 553-554, 564; *Sheppard v Maxwell,* 384 US 333, 359-363; 86 S Ct 1507; 16 L Ed 2d 600 (1966).

"The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." Also, see *Nebraska Press Ass'n, supra,* p 601, fn 27 (Brennan, J., *concurring),* and *Seattle Times Co v Rhinehart,* — US —; 104 S Ct 2199; 81 L Ed 2d 17 (1984).

a fair trial outweighed the right of access to the proceedings.

"Four justices dissented in *Gannett* in an opinion written by Justice Blackmun. The dissenters inferred from the unbroken common-law tradition of public trials in criminal cases that the Sixth Amendment was intended to create a public right to attend trials. The dissenters recognized that pretrial proceedings were not open to the public at common law, but concluded that the pretrial suppression hearing involved in *Gannett* should not have been closed since under common law pretrial suppression hearings were unknown and objections to the admission of evidence were made at trial.

"In *Detroit Free Press v Recorder's Court Judge,* 409 Mich 364, 388; 294 NW2d 827 (1980), the Court considered some of the same questions involved in *Gannett.* The Court concluded that the Sixth Amendment and art 1, § 20 of the Michigan Constitution created a public right of access to trials. However, *Gannett* was expressly distinguished as involving a pretrial proceeding. Moreover, the Court relied upon the same type of historical analysis conducted by the dissenters in *Gannett,* which, as has been seen, does not support a public right of access to pretrial proceedings not open to the public at common law. In view of the foregoing, it does not appear that the Sixth Amendment or the equivalent state constitutional provision require public access to a preliminary examination.

"In *Richmond,* the Court considered whether the First and Fourteenth Amendments created a constitutional right of access to trials, a question it had expressly refrained from deciding in *Gannett. Richmond* involved the exclusion of all members of the public from a criminal trial. No opinion in *Richmond* commanded a majority of the Court, but seven of the eight justices participating found that the First and Fourteenth Amendments created a constitutional right of access to criminal trials. However, the opinion of Chief Justice Burger, joined by Justices White and Stevens, stated that the First Amendment guarantees of freedom of speech and of the press protected a right of access to places traditionally open to the public, such as trials. The opinion of Justice Brennan, joined by Justice Mar-

shall, emphasized the necessity of consulting historical practice in determining whether a constitutional right of access exists. The opinion of Justice Blackmun approved the historical approach taken in the Chief Justice's opinion. Thus, the result in *Richmond* was based on the common-law tradition of open trials. Justice Stewart's opinion in *Gannett, supra,* 387-391, demonstrated conclusively that no such tradition requires open preliminary examinations. In view of the foregoing, we cannot say that the First Amendment requires public access to preliminary examinations." *Midland Publishing Co, supra,* pp 60-62.

In contrast, the dissent reasoned that, since the preliminary examination is a part of a criminal trial, MCL 750.520k; MSA 28.788(11) violated US Const, Am VI; Const 1963, art 1, § 20. *Id.,* p 65.

First, we note that the press has no greater rights of access to pretrial proceedings than does the public generally. Also, we are persuaded that a preliminary examination is not a part of trial, that the public has no common-law or constitutional rights of access to that proceeding, and that the public's statutory right of access has been validly restricted.

## 1. *Common-Law and Statutory Rights*

As noted previously,[14] common-law rights can be modified or abolished by the Legislature. Thus, even if the public possesses a common-law right of access to preliminary examinations,[15] the Legislature can restrict that right. Consequently, MCL 750.520k; MSA 28.788(11) is a valid restriction on any common-law right.

Similarly, any statutory right of access has also properly been restricted. Generally, the public

[14] See fn 7 and *ante,* p 159.

[15] The existence of such a common-law right will be discussed below.

does possess a statutory right of access to all courtroom proceedings.

"The sittings of every court within this state shall be public except that a court may, for good cause shown, exclude from the courtroom other witnesses in the case when they are not testifying and may, in actions involving scandal or immorality, exclude all minors from the courtroom unless the minor is a party or witness. This section shall not apply to cases involving national security." MCL 600.1420; MSA 27A.1420.[16]

Although this right has existed since 1846,[17] it is not absolute. *Detroit Free Press v Macomb Circuit Judge,* 405 Mich 544, 546-547; 275 NW2d 482 (1979).

It is a fundamental rule of statutory construction that "apparently conflicting statutes should be construed, if possible, to give each full force and effect." *State Highway Comm'r v Detroit City Controller,* 331 Mich 337, 358; 49 NW2d 318 (1951). It is also well established that a later-enacted specific statute operates as an exception or a qualification to a more general prior statute covering the same subject matter and that, if there is an irreconcilable conflict between two statutes, the later-enacted one will control. See, *e.g., State Highway Comm'r, supra; People v Flynn,* 330 Mich 130, 141; 47 NW2d 47 (1951); *Metropolitan Life Ins Co v Stoll,* 276 Mich 637, 641; 268 NW 763 (1936).

MCL 750.520k; MSA 28.788(11) was enacted by 1974 PA 266 and became effective on April 1, 1975. In this case, there is no irreconcilable conflict. Rather, the later-enacted specific statute

---

[16] Note that the Open Meetings Act, MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.,* does not apply to the judiciary. MCL 15.262(a); MSA 4.1800(12)(a) and MCL 15.263(7); MSA 4.1800(13)(7); *In re 1976 PA 267,* 400 Mich 660; 255 NW2d 635 (1977).

[17] See fn 11 and *People v Murray,* 89 Mich 276, 286; 50 NW 995 (1891).

serves as an exception or qualification of the right conferred by the more general prior statute. Consequently, MCL 750.520k; MSA 28.788(11) is a valid restriction on the public's general statutory right of access to courtroom proceedings.

### 2. *Constitutional Rights*

Finally, the public does not have any constitutional rights of access to preliminary examinations. The relevant federal and state constitutional provisions read as follows:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." US Const, Am I.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defense." US Const, Am VI.

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." US Const, Am XIV, § 1.

"Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5.

"In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal." Const 1963, art 1, § 20.

As the Court of Appeals majority noted, in *Gannett Co, Inc v DePasquale,* 443 US 368, 379-391; 99 S Ct 2898; 61 L Ed 2d 608 (1979), the trial court ordered that the press and the public be excluded from a pretrial suppression hearing in a murder prosecution. In a 5-4 decision, the majority held that members of the public have no constitutional right of access to criminal trials under the Sixth and Fourteenth Amendments.[18]

"Among the guarantees that the [Sixth] Amendment provides to a person charged with the commission of a criminal offense, and to him alone, is the 'right to a speedy and public trial, by an impartial jury.' The Constitution nowhere mentions any right of access to a criminal trial on the part of the public; its guarantee, like the others enumerated, is personal to the accused." *Id.,* pp 379-380.

See, also, 1 Cooley, Constitutional Limitations (8th ed), p 647. The majority also noted that, although the public at common law enjoyed a right of access

[18] Generally, the Sixth Amendment public trial provision is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972); *Duncan v Louisiana,* 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968).

to both civil and criminal trials, the common law did not confer a similar right in regard to pretrial proceedings. *Gannett, supra,* pp 384-391. Finally, although the Court declined to decide whether the First and Fourteenth Amendments[19] conferred upon the public a constitutional right of access to criminal trials, it held that, even if such a right existed, it was not violated when: (1) no objection was voiced when the closure motion was made, (2) members of the public were subsequently given an opportunity to object to closure of the proceedings, (3) the trial court concluded that the potential prejudice to defendant's constitutional right to a fair trial outweighed the public's right of access, and (4) any denial of access was not absolute but temporary. *Id.,* pp 391-393. In effect, the Court held that any First Amendment right of access possessed by the public could be balanced against a defendant's Sixth Amendment right to a fair trial.

The dissenters in *Gannett* found, upon the basis of the public's common-law right of access to criminal trials, that the Sixth Amendment was intended to create an identical right. *Id.,* pp 415-433. Further, the dissenters noted that the evidentiary suppression hearing is a "close equivalent" to a full trial on the merits. Also, such a hearing was unknown at common law. Instead, at common law, any objections to the admission of evidence were made at trial. Thus, the dissenters concluded that the public must possess a constitutional right of access to suppression hearings. *Id.,* pp 433-439. However, they too recognized that that right was not absolute. *Id.,* pp 439-446.

[19] Generally, the First Amendment freedom of the press and speech provisions are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Near v Minnesota ex rel Olson,* 283 US 697; 51 S Ct 625; 75 L Ed 1357 (1931).

In *Richmond Newspapers, Inc v Virginia,* 448 US 555; 100 S Ct 2814; 65 L Ed 2d 973 (1980), the Supreme Court addressed the question which it had expressly left open in *Gannett, i.e.,* whether the First and Fourteenth Amendments confer upon the public a constitutional right of access to criminal trials. The *Richmond* trial court, upon defendant's motion, and absent any objection from the prosecution, had ordered defendant's trial for murder closed to the public. Although no opinion garnered a majority, seven of the eight justices participating in the case answered the question before the Court in the affirmative. *Id.,* pp 575-580 (opinion of Burger, C.J.), pp 581-582 (opinion of White, J.), p 584 (opinion of Stevens, J.), pp 585, 597-598 (opinion of Brennan, J.), p 599 (opinion of Stewart, J.), and p 604 (opinion of Blackmun, J.). Also, those seven agreed that a determination of the question presented required an historical analysis. *Id.,* pp 564-569 (opinion of Burger, C.J.), pp 581-582 (opinion of White, J.), p 584 (opinion of Stevens, J.), pp 589-593, 597-598 (opinion of Brennan, J.), p 599 (opinion of Stewart, J.), and p 601 (opinion of Blackmun, J.). Finally, six justices were of the view that the public's First Amendment right of access could be balanced against a defendant's Sixth Amendment right to a fair trial. *Id.,* pp 580-581 (opinion of Burger, C.J.), p 582 (opinion of White, J.), p 584 (opinion of Stevens, J.), pp 585, 593, fn 18, 597-598 (opinion of Brennan, J.), pp 600-601 (opinion of Stewart, J.).

Subsequent to the Court of Appeals decision in this case, the United States Supreme Court has decided three more cases dealing with similar issues. First, in *Globe Newspaper Co v Superior Court for the County of Norfolk,* 457 US 596; 102 S Ct 2613; 73 L Ed 2d 248 (1982), the Supreme Court addressed in greater detail the balancing of the

public's First Amendment right of access to criminal trials and a defendant's Sixth Amendment right to a fair trial. A state statute required trial judges, presiding over trials involving certain sexual offenses perpetrated against minor victims, to exclude the public from the courtroom during the testimony of the victim. While reaffirming its view that the public possesses a First Amendment right of access to *all* criminal trials, *id.,* pp 603-606, the Court stated that

"the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.,* pp 606-607.

The Court also made it clear

"that a rule of mandatory closure respecting the testimony of minor sex victims is constitutionally infirm. In individual cases, and under appropriate circumstances, the First Amendment does not necessarily stand as a bar to the exclusion from the courtroom of the press and general public during the testimony of minor sex-offense victims. But a mandatory rule, requiring no particularized determinations in individual cases, is unconstitutional." *Id.,* p 611, fn 27.

Rather, the Court implied that the public's First Amendment right of access to criminal trials can be abridged only after an individualized exercise of the trial court's discretion. *Id.,* pp 607-610.

In the first of two decisions rendered in 1984, the Supreme Court held that the public's First Amendment right of access to criminal trials ex-

tended to voir dire proceedings. *Press-Enterprise Co v Superior Court of California, Riverside County,* 464 US 501; 104 S Ct 819; 78 L Ed 2d 629 (1984). Once again, the Court emphasized the historical analysis necessary to a proper determination of the question before it. *Id.,* pp 505-508. Also, the Court reaffirmed the balancing test set forth in *Globe Newspaper, supra,* pp 606-607, and expanded on that test as follows:

"The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." 464 US 510.

Finally, the Court made it clear that, prior to abridging the public's First Amendment right of access, a trial court must consider alternatives to closing the proceedings. *Id.,* p 511.

In its most recent exposition in this area, the Supreme Court held that a defendant's right to a public trial, conferred by the Sixth and Fourteenth Amendments, extends to a pretrial suppression hearing. *Waller v Georgia,* — US —; 104 S Ct 2210; 81 L Ed 2d 31, 38 (1984).

"[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. The central aim of a criminal proceeding must be to try the accused fairly, and '[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant.' *Gannett, supra,* at 380."

The *Waller* trial court, upon the prosecution's motion and over the defendant's objection, ordered

a pretrial suppression hearing closed to all persons other than witnesses, court personnel, and the parties and their counsel. In a unanimous opinion, the Supreme Court abandoned the historical analysis which marked its prior decisions, instead analogizing pretrial suppression hearings to bench trials. 81 L Ed 2d 37-39.

"In sum, we hold that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its predecessors.  .

\* \* \*

"Under *Press-Enterprise,* the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 81 L Ed 2d 39.

Finally, the Court stated that "[t]o the extent there is an independent public interest in the Sixth Amendment public-trial guarantee, \* \* \* it applies with full force to suppression hearings." 81 L Ed 2d 39, fn 5.

Our Court, too, has had occasion to examine related issues. As noted previously, we have recognized that the public's statutory right of access to all courtroom proceedings, embodied in MCL 600.1420; MSA 27A.1420, is not absolute. *Detroit Free Press v Macomb Circuit Judge, supra.* In addition, we stated that:

"The statutory right of the public is subject to limitations imposed by the Due Process Clause guaranteeing a defendant in a criminal case a fair trial and by Const 1963, art 6, § 1, vesting the judicial power in one court of justice." *Id.,* p 549, fn 5.

Finally, in language foreshadowing that of the United States Supreme Court cases already discussed, it was held that:

"The parties may not, by their mere agreement, empower a judge to exclude the public and press. When a motion for closure is made, the judge should, at a minimum, take testimony at a hearing open to all interested parties, explore the constitutional and statutory validity of any proffered justifications for excluding the public and press from any portion of the trial, and determine whether any alternative and less restrictive mechanisms exist. This was not done here and, hence, the closing of the trial was improper." *Id.,* p 549.

Almost 100 years ago, this Court recognized that the state constitutional guarantee to the accused of a speedy and public trial[20] and the statutory direction that "[t]he sittings of every court within this State shall be public"[21] conferred upon the accused the right to a public trial. *People v Murray,* 89 Mich 276, 283-286; 50 NW 995 (1891). However, we also intimated that the public possessed a right of access which complemented the accused's right to a public trial, but did not distinguish the source of the public's right. *Id.,* pp 286-291.

More recently, in *Detroit Free Press v Recorder's Court Judge,* 409 Mich 364; 294 NW2d 827 (1980), we found that, in addition to MCL 600.1420; MSA 27A.1420, the common law conferred on the public a right of access to criminal trials which an accused could not abridge merely by waiving his or her federal and state constitutional rights to a public trial. *Id.,* pp 373, 376-377,

---

[20] That guarantee has appeared in every one of our state's constitutions. See Const 1835, art 1, § 10; Const 1850, art 6, § 28; Const 1908, art 2, § 19; Const 1963, art 1, § 20.

[21] See fn 11.

385-390. However, it was recognized that the public's right of access might in some cases be limited in order to preserve a defendant's constitutional rights to a fair trial.

"[U]nder extraordinary circumstances to preserve the due process right of a fair trial, an accused may request that the public's access to a trial be limited or temporarily denied. Upon such rare occasion, the court must exercise its discretion in balancing competing interests. The judge must always carefully balance the fundamental common-law principle of open trials with the specific unusual circumstance that allegedly endangers a fair trial.

"An accused who seeks closure has the heavy burden to show by a substantial probability that prejudicial error denying the accused a fair trial will result from proceeding in public. In addition, it must be shown by a substantial probability that closure will be effective in dealing with the danger and no alternatives to closure exist that would protect the fair trial right.

\* \* \*

"[B]ecause it is not only the accused who has interests in the trial process, any limitation on the public's right to attend a trial must adhere to a standard that there is a substantial probability that prejudicial error denying the accused a fair trial will result." *Id.,* pp 390-391.

Although the majority did not do so, those writing separately would have recognized the public's First Amendment right in the disposition of the case. *Id.,* pp 393-396 (opinion of Levin, J.), pp 396-400 (opinion of Ryan, J.).

Today, we must recognize that both the First Amendment, as applied to the states through the Fourteenth, and Const 1963, art 1, § 5 confer upon the public a right of access to *criminal* trials.[22]

---

[22] We are not presented with, and need not decide, the question whether and to what extent those same constitutional provisions, or

However, that right does not extend to preliminary examinations. Accepting the historical analyses of the foregoing cases, it is clear that the public enjoyed no common-law right of access to proceedings undertaken to determine probable cause.[23] Indeed, no case authority or scholarly writings can be found to suggest otherwise. Rather, that which can be gleaned from history indicates that proceedings leading to a person's indictment were not open to the public. See, generally, *Gannett, supra,* p 395 (Burger, C.J., *concurring),* p 437 (Blackmun, J., *dissenting);*[24] Plunkett, A Concise History of Common Law (1929); Smith, Sir Thomas, *De Republica Anglorum* (Alston ed, Cambridge: University Press, 1906). Also, it is important to note that, although the federal constitution guarantees an accused a "public trial,"

others, confer upon the public a right of access to *civil* trials. However, it is important to note that the public's right of access at common law extended to both civil and criminal trials. See *Gannett, supra,* pp 384-386.

Also, we do not interpret *Waller v Georgia, supra,* as recognizing that the Sixth Amendment, as applied to the states through the Fourteenth, confers upon the public a right of access to criminal trials. However, even if it did, the case before us is distinguishable because, in the underlying criminal actions, the suppression orders were entered upon motions of the defendants. See fn 2. Similarly, we do not believe that the state constitution's public trial guarantee, Const 1963, art 1, § 20, confers upon the public a right of access to criminal trials. See fns 25-27 and accompanying text.

[23] Only those proceedings from voir dire through sentencing, inclusive, were generally open to the public at common law.

[24] "It is significant that the sources upon which the Court relies do not concern suppression hearings. They concern hearings to determine probable cause to bind a defendant over for trial. *E.g.,* Indictable Offences Act, 11 & 12 Vict, ch 42, §§ 17, 19 (1848); Cal Penal Code Ann § 868 (West Supp 1979). Such proceedings are not critical to the criminal justice system in the way the suppression-of-evidence hearing is and they are not close equivalents of the trial itself in form. The fact that such proceedings might have been held in private at common law in England or in this country does not detract from my conclusion that pretrial suppression hearings should not be, any more than does the fact that grand juries—or preliminary proceedings such as coroner's inquests at common law—were and are secret." *Gannett, supra,* p 437 (Blackmun, J., *dissenting).*

US Const, Am VI, the Fifth Amendment speaks only of "presentment or indictment of a Grand Jury." Since grand jury proceedings have historically been conducted in the absence of the public, there is no precedent for the United States Supreme Court, pursuant to an historical analysis, to extend the public's First Amendment right of access to probable cause determinations. Consequently, it must be concluded that the public does not enjoy any federal constitutional right of access to preliminary examinations.

Likewise, although the state constitution has long provided for a "public trial,"[25] originally, it too called for "presentment or indictment of a grand jury." See Const 1835, art 1, § 11. However, history shows that grand jury proceedings were never public and were not considered part of the trial for purposes of the public's common-law right of access.[26] Moreover, even if such proceedings were public, the grand jury provision did not survive past the constitution of 1835. Instead, the substance of that right was altered to be "informed of the nature of the accusation." Const 1850, art 6, § 28; Const 1908, art 2, § 19; Const 1963, art 1, § 20. In any event, the nature of the proceedings employed to determine probable cause has traditionally been subject to legislative enactment.[27] Accordingly, the Legislature has the power to control access to those proceedings. Consequently, it must be concluded that the public does not enjoy any state constitutional right of access to preliminary examinations.

---

[25] See fn 20.

[26] See fns 23 and 24 and accompanying text.

[27] See, generally, chapters VI and VII of the Code of Criminal Procedure. MCL 766.1 *et seq.;* MSA 28.919 *et seq.,* and MCL 767.1 *et seq.;* MSA 28.941 *et seq.*

### III. CONCLUSION

MCL 750.520k; MSA 28.788(11) does not constitute an unlawful prior restraint on publication. Rather, for an event-terminable time, the statute merely directs that the court file be withheld from the public. Such suppression is a valid legislative restriction on the public's common-law right of access to public records.

Implicitly, MCL 750.520k; MSA 28.788(11) also requires that the preliminary examination be closed to the public. However, as history shows, the public enjoys no common-law or constitutional rights of access to that proceeding. Further, although the public generally does possess a statutory right of access to all courtroom proceedings, MCL 750.520k; MSA 28.788(11) is a valid legislative restriction on that right.

Consequently, the judgment of the Court of Appeals is affirmed. No costs, a public question being involved.

WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, and BOYLE, JJ., concurred with CAVANAGH, J.