### *In re* MIDLAND PUBLISHING COMPANY, INC

Docket No. 53934. Submitted March 13, 1981, at Lansing.—Decided February 2, 1982. Leave to appeal applied for.

Midland Publishing Company, Inc., brought an action for superintending control in Midland Circuit Court, seeking the vacation of suppression orders entered by a judge of the 75th Judicial District Court in certain criminal sexual conduct cases. The orders had been entered pursuant to a statute allowing suppression of the names of the victim, the actor and the details of the offense until the actor is arraigned on the information, the charge is dismissed, or the case otherwise concluded, whichever is first. Midland Publishing alleged that the suppression orders were unconstitutional prior restraints on publication and violated the right of access to criminal trials and to public records. The circuit court, David S. DeWitt, J., denied superintending control, and Midland Publishing appeals. *Held:*

1. Suppression orders issued pursuant to the statute do not prevent nonparties from publishing information which they may have acquired from sources other than the court files. The statute confers no power on the judiciary to gag or discipline the press. So construed, it does not constitute a prior restraint on publication.

2. There is no consitutional requirement of public access to preliminary examinations.

3. Access to public records is a common-law right, not a constitutional one, and may be restricted by the Legislature.

Affirmed. ,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16A Am Jur 2d, Constitutional Law § 498.

The Supreme Court and the right of free speech and press, 93 L Ed 1151, 2 L Ed 2d 1706, 11 L Ed 2d 1116, 16 L Ed 2d 1053, 21 L Ed 2d 976.

[2, 6] 62 Am Jur 2d, Privacy § 32.

Propriety of publishing identity of sexual assault victim. 86 ALR3d 80.

Validity and construction of statute prohibiting publication of name or identity of victim of sexual crime. 13 ALR2d 1213.

[3, 5, 6] 21A Am Jur 2d, Criminal Law §§ 668, 879.

Exclusion of public during criminal trial. 48 ALR2d 1436.

[4] 66 Am Jur 2d, Records and Recording Laws § 12 *et seq.*

BEASLEY, P.J., dissented. He would hold that any interest a defendant may have in a private, secret trial is outweighed by the interests of society in the conduct of criminal trials. A preliminary examination is such an essential, integral part of the criminal procedure that it is a part of the trial and should be open to the public. Because the statute in question allows the public and press to be excluded from a preliminary examination, it is unconstitutional as a violation of the right to a public trial. Judge BEASLEY would vacate the suppression orders.

### OPINION OF THE COURT

1. CONSTITUTIONAL LAW — RESTRAINT ON PUBLICATION.

   A party seeking to justify a prior restraint on publication must overcome a heavy presumption of unconstitutionality (US Const, Am I; Const 1963, art 1, § 5).

2. CONSTITUTIONAL LAW — SUPPRESSION OF INFORMATION — STATUTES.

   The statutory provision which allows the suppression of names of victims and actors and details of various criminal sexual conduct offenses until the actor is arraigned, the charge is dismissed, or the case is otherwise concluded does not preclude nonparties from publishing such information obtained from other sources and therefore does not constitute a prior restraint on publication (MCL 750.520k; MSA 28.788[11]).

3. PRETRIAL PROCEDURE — PRELIMINARY EXAMINATION — RIGHT OF PUBLIC ACCESS — CONSTITUTIONAL LAW.

   There is no constitutional requirement of public access to a preliminary examination.

4. RECORDS — ACCESS TO PUBLIC RECORDS.

   Michigan recognizes a common-law right of access to public records; however, this is not a constitutional right, and the Legislature may restrict the general right of access.

### DISSENT BY BEASLEY, P.J.

5. CONSTITUTIONAL LAW — CRIMINAL LAW — PUBLIC TRIAL.

   *An accused has an absolute right to a public trial, but does not have a corresponding right to compel a private trial (US Const, Am VI; Const 1963, art 1, § 20).*

6. PRETRIAL PROCEDURE — PRELIMINARY EXAMINATION — RIGHT OF PUBLIC ACCESS — CONSTITUTIONAL LAW.

   *A preliminary examination is an essential, integral part of a criminal proceeding and, as such, is a part of the trial and*

*should be open to the public; a statute which allows suppression of the names of the victim and actor and details of an alleged criminal sexual conduct offense until the accused is arraigned or the case is dismissed or otherwise disposed of is an unconstitutional violation of the right to a public trial (US Const, Am VI; Const 1963, art 1, § 20).*

*Herbert H. Edwards,* for Midland Publishing Company, Inc.

*Doyle A. Rowland,* for the district court judge.

Amicus Curiae:

*Keywell & Rosenfeld* (by *Dawn L. Phillips* and *Debi D. Kirsch),* for the Michigan Press Association.

Before: BEASLEY, P.J., and BASHARA and MAC-KENZIE, JJ.

MACKENZIE, J. This case presents questions concerning the constitutionality of MCL 750.520k; MSA 28.788(11), which provides:

"Upon the request of the counsel or the victim or actor in a prosecution under sections 520b to 520g the magistrate before whom any person is brought on a charge of having committed an offense under sections 520b to 520g shall order that the names of the victim and actor and details of the alleged offense be suppressed until such time as the actor is arraigned on the information, the charge is dismissed, or the case is otherwise concluded, whichever occurs first."

Sections 520b to 520g are MCL 750.520b; MSA 28.788(2) to MCL 750.520g; MSA 28.788(7), which cover various aspects of criminal sexual conduct.

Plaintiff publishes the only daily newspaper in Midland County, Michigan, the *Midland Daily News.* Plaintiff brought this action to obtain an

order of superintending control vacating suppression orders entered by a judge of the 75th District Court in certain criminal sexual conduct cases. Plaintiff's complaint alleged that it knew the identity of the defendant in two pending cases and some of the details of the alleged offenses. Plaintiff contended that the suppression orders were unconstitutional as prior restraints on publication and as violative of plaintiff's right of access to criminal trials and to public records. Plaintiff was denied an order of superintending control and appeals by right.

I

Freedom of speech and of the press are guaranteed by federal and state constitutional provisions. US Const, Ams I, XIV; Const 1963, art 1, § 5. As prior restraints on publication are the most serious and least tolerable infringement of First Amendment rights, the party seeking to justify a prior restraint must overcome a heavy presumption of unconstitutionality. *Near v Minnesota ex rel Olson,* 283 US 697; 51 S Ct 625; 75 L Ed 1357 (1931), *Nebraska Press Ass'n v Stuart,* 427 US 539; 96 S Ct 2791; 49 L Ed 2d 683 (1976).

In *WXYZ, Inc v Hand,* 463 F Supp 1070 (ED Mich, 1979), the federal court held that orders issued pursuant to the statute at issue here were void as prior restraints. However, in that case the defendant district judge announced that his suppression orders applied to news media personnel as well as to others, and would have taken steps to determine if the news commentators involved were in contempt of court if the federal action had not intervened. To the contrary, in the instant case, the circuit judge held:

· "If § 520k were construed as the publisher fears, it would certainly constitute a prior restraint upon a publication and would, in this court's opinion, be clearly in violation of the First Amendment rights of the complainant. An examination of the statute, however, discloses no express authorization to the 'magistrate before whom any person is brought' to enforce the suppression order authorized by the section against persons not party to the proceedings, nor served with a copy of the order.

"The suppression of names and details concerning pending litigation is not new to the jurisprudence of the State of Michigan. Whether the practice is commendable or not, it has existed since long prior to this century. See *Jan Schmedding v County Clerk of Wayne County,* 85 Mich 1 [48 NW 201] (1891). A suppression · order, as the term is commonly understood in the State of Michigan, contemplates only a direction to the court personnel to prevent public disclosure of the official files. The terms of the statute make it clear that the statutory suppression order would also require the closing of the preliminary examination to the public and the press, since the first event upon which the termination of this suppression order is conditioned is the arraignment on the information, unless · the case is concluded without bind-over to the circuit court.

"So construed, the statute does not constitute a restraint against publication, since it contemplates no sanctions against non-parties publishing information, no matter how acquired. It is a fundamental rule of statutory interpretation that where two constructions are possible, one constitutional and one unconstitutional, the constitutional construction should be adopted. The judges of the 75th Judicial District have, through their attorney, claimed no power to gag or discipline the press, and have, in fact, acknowledged that the statute confers no such power upon them."

We agree with the circuit judge's construction of the statute. So construed, the statute poses no prior restraint problem. See *Gannett Co v DePasquale,* 443 US 368, 393, fn 25; 99 S Ct 2898; 61 L Ed 2d 608 (1979):

"This Court's decision in *Nebraska Press Ass'n v Stuart*, 427 US 539 [96 S Ct 279; 49 L Ed 2d 683 (1976)], is of no assistance to the petitioners in this case. The *Nebraska Press* case involved a direct prior restraint imposed by a trial judge on the members of the press, prohibiting them from disseminating information about a criminal trial. Since 'it has been generally, if not universally, considered that it is the chief purpose of the [First Amendment's] guaranty to prevent previous restraints upon publication,' *Near v Minnesota ex rel Olson*, 283 US 697, 713 [51 S Ct 625; 75 L Ed 1357 (1931)], the Court held that the order violated the constitutional guarantee of a free press. See also *Oklahoma Publishing Co v District Court*, 430 US 308 [97 S Ct 1045; 51 L Ed 2d 355 (1977)]. The excluding order in the present case, by contrast, did not prevent the petitioner from publishing any information in its possession. The proper inquiry, therefore, is whether the petitioner was denied any constitutional right of access."

## II

The existence of a constitutional right of access to trials was considered by the United States Supreme Court in *Gannett* and in *Richmond Newspapers, Inc v Virginia*, 448 US 555; 100 S Ct 2814; 65 L Ed 2d 973 (1980). *Gannett* involved a pretrial hearing on a motion to suppress certain evidence; however, much of the reasoning in the majority opinion by Justice Stewart was based on considerations applicable to trials. The Court held that members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend criminal trials, even though open trials were the norm under common law. The Court noted in passing that the public had no right to attend pretrial proceedings under common law. The Court declined to decide whether the

First and Fourteenth Amendments created a constitutional right to attend trials. Instead, the Court held that, assuming *arguendo* that such a right existed, it was not violated where denial of access was not absolute but temporary, members of the public were given an opportunity to object to closure of the proceedings, and the trial court concluded that the potential prejudice to defendant's constitutional right to a fair trial outweighed the right of access to the proceedings.

Four justices dissented in *Gannett* in an opinion written by Justice Blackmun. The dissenters inferred from the unbroken common-law tradition of public trials in criminal cases that the Sixth Amendment was intended to create a public right to attend trials. The dissenters recognized that pretrial proceedings were not open to the public at common law, but concluded that the pretrial suppression hearing involved in *Gannett* should not have been closed since under common law pretrial suppression hearings were unknown and objections to the admission of evidence were made at trial.

In *Detroit Free Press v Recorder's Court Judge,* 409 Mich 364, 388; 294 NW2d 827 (1980), the Court considered some of the same questions involved in *Gannett.* The Court concluded that the Sixth Amendment and art 1, § 20 of the Michigan Constitution created a public right of access to trials. However, *Gannett* was expressly distinguished as involving a pretrial proceeding. Moreover, the Court relied upon the same type of historical analysis conducted by the dissenters in *Gannett,* which, as has been seen, does not support a public right of access to pretrial proceedings not open to the public at common law. In view of the foregoing, it does not appear that the Sixth

Amendment or the equivalent state constitutional provision require public access to a preliminary examination.

In *Richmond,* the Court considered whether the First and Fourteenth Amendments created a constitutional right of access to trials, a question it had expressly refrained from deciding in *Gannett. Richmond* involved the exclusion of all members of the public from a criminal trial. No opinion in *Richmond* commanded a majority of the Court, but seven of the eight justices participating found that the First and Fourteenth Amendments created a constitutional right of access to criminal trials. However, the opinion of Chief Justice Burger, joined by Justices White and Stevens, stated that the First Amendment guarantees of freedom of speech and of the press protected a right of access to places traditionally open to the public, such as trials. The opinion of Justice Brennan, joined by Justice Marshall, emphasized the necessity of consulting historical practice in determining whether a constitutional right of access exists. The opinion of Justice Blackmun approved the historical approach taken in the Chief Justice's opinion. Thus, the result in *Richmond* was based on the common-law tradition of open trials. Justice Stewart's opinion in *Gannett, supra,* 387-391, demonstrated conclusively that no such tradition requires open preliminary examinations. In view of the foregoing, we cannot say that the First Amendment requires public access to preliminary examinations.

### III

There is no authority establishing a constitutional right to inspect public records. Plaintiff

relies on *Cox Broadcasting Co v Cohn,* 420 US 469,
496-497; 95 S Ct 1029; 43 L Ed 2d 328 (1975).
However, in *Cox,* Cox Broadcasting and one of its
reporters were sued for disclosing the identity of a
minor rape victim. The identity was obtained from
court records open to the public. The Court held:

> "Appellee has not contended that the name was
> obtained in an improper fashion *or that it was not on
> an official court document open to public inspection.*
> Under these circumstances, the protection of freedom of
> the press provided by the First and Fourteenth Amend-
> ments bars the State of Georgia from making appel-
> lants' broadcast the basis of civil liability." (Emphasis
> added.)

Plaintiff also relies upon *Nixon v Warner Com-
munications, Inc,* 435 US 589; 98 S Ct 1306; 55 L
Ed 2d 570 (1978). In *Nixon,* the Court pointed out
that the courts of this country have generally
recognized a *common-law* right to inspect and copy
public records, including judicial records. The
Court recognized that the common-law right was
not absolute, and noted that in the case before it
the right had been modified by the Presidential
Recordings and Materials Preservation Act, note
following 44 USC 2107. The Court held that nei-
ther the First Amendment guaranty of freedom of
the press nor the Sixth Amendment guaranty of a
public trial required that the press be given access
to presidential tapes which had been admitted in
evidence at a criminal trial.

Michigan has long recognized a common-law
right to access to public records. *Burton v Tuite,*
78 Mich 363; 44 NW 282 (1889), *Nowack v Auditor
General,* 243 Mich 200; 219 NW 749 (1928). How-
ever, since a common-law right rather than a
constitutional right is involved, the Legislature

may restrict the general broad right of access to public records. See *Booth Newspapers, Inc v Muskegon Probate Judge,* 15 Mich App 203; 166 NW2d 546 (1968).

Affirmed.

BASHARA, J., concurred.

BEASLEY, P.J. *(dissenting).* With most of Judge MacKenzie's splendid opinion, I am in accord.

The Sixth Amendment to the United States Constitution guarantees a public trial.[1] While the right of the accused to a public trial is absolute, the accused does *not* possess a corresponding right to compel a private trial.[2] I would interpret the federal and state constitutions to require public criminal trials.

The open-court, open-trial concept is not only for the benefit of the public, but is basic to our concept of a free and open society. Great as the constitutional rights of individual defendants are, I would hold that any interest a defendant may have in a private, secret trial must give way to the interests of society in seeing, hearing and knowing what goes on in the criminal courts.[3] Buttressing these propositions, but secondary to Sixth Amendment consideration, are plaintiffs' First Amendment rights.[4] Under my analysis, it is unnecessary to decide whether application of the statute in question would constitute an unconstitutional prior restraint on publication.

There remains consideration of the nature of a preliminary examination in criminal proceedings.

[1] US Const, Am VI; Const 1963, art 1, § 20.

[2] *Detroit Free Press v Recorder's Court Judge,* 409 Mich 365, 383; 294 NW2d 827 (1980), *Singer v United States,* 380 US 24, 35; 85 S Ct 783; 13 L Ed 2d 630 (1965).

[3] *Detroit Free Press v Recorder's Court Judge, supra.*

[4] *Id.,* particularly, see concurring and dissenting opinions.

In *People v Bellanca,*[5] the Supreme Court spelled
out that a preliminary examination is an adver-
sary judicial proceeding, that both the federal and
state constitutions[6] afford the accused the right to
be confronted by witnesses and to be represented
by counsel at the preliminary examination,[7] and
that it is a critical stage of the criminal process.

The preliminary examination is conducted in a
courtroom. I am satisfied that it has become an
essential, integral part of the criminal procedure
and, as such, it is part of the trial and should be
open to the public.

Concluding that the press and public are enti-
tled to access and attendance at a preliminary
examination, I see no basis for constitutionally
suppressing the naming of the victim and actor
and details of the alleged offense. I would hold
that the statute, that is, MCL 750.520k; MSA
28.788(11), is unconstitutional as a violation of
Article 1, § 20 of the 1963 Michigan Constitution
and the Sixth Amendment to the United States
Constitution. Since I would hold the statute uncon-
stitutional, it is unnecessary to ground the deci-
sion upon the proposition that the statute becomes
a prior restraint upon the freedom of the press, in
violation of Article 1, § 5 of the 1963 Michigan
Constitution and of the First Amendment to the
United States Constitution.

In conclusion, I would vacate the suppression
orders entered by the district judge.

---

[5] 386 Mich 708; 194 NW2d 863 (1972).

[6] US Const, Am VI; Const 1963, art 1, § 20.

[7] *People v Bellanca, supra.*