**Mary Ann MILLS, Individually and as Executrix of the Estate of Jesse Mills, Plaintiffs–Appellees, Cross–Appellants,**

**Manville Corporation, Asbestos Disease Compensation Fund, Intervenor,**

v.

**GAF CORPORATION, et al., Defendants,**

**Carey Canada, Inc., Defendant–Appellant, Cross–Appellee.**

Nos. 90–3296, 90–3324.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1993.

Decided March 31, 1994.

Robert B. Newman, Tamara L. Greenfield (briefed), Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, for Jesse Mills in No. 90–3296.

Robert L. Jennings, Jr. (argued and briefed), Henderson & Goldberg, Pittsburgh, PA, Robert B. Newman, Tamara L. Greenfield, Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, for Mary Ann Mills.

Ann Collins Hindman, Bloom & Greene, Cincinnati, OH, Jeffrey W. Warren, Lynn Van Ramey, Wendy V.E. England, Bush, Ross, Gardner, Warren & Rudy, Tampa, FL, Michael D. Eagen (argued and briefed), Cincinnati, OH, for Carey Canada, Inc. in both cases.

Robert L. Jennings, Jr. (argued and briefed), Henderson & Goldberg, Pittsburgh, PA, Tamara L. Greenfield (briefed), Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, for Jesse Mills in No. 90–3324.

Tamara L. Greenfield, Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, for Mary Ann Mills in No. 90–3324.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BERTELSMAN, Chief District Judge.[*]

SUHRHEINRICH, Circuit Judge.

Defendant Carey Canada, Inc. appeals from the final order and judgment entered by the trial court following a jury verdict in favor of plaintiff Jesse Mills, contending that the district court improperly restricted its peremptory challenges. Plaintiff Mary Ann Mills cross-appeals,[1] contending the district court improperly calculated a credit based upon the Millses' settlement agreement with defendant Johns–Manville which was then applied as a setoff to the jury verdict entered on behalf of Jesse Mills against Carey Canada.

## I.

Plaintiffs Jesse and Mary Ann Mills filed a personal injury suit against Jesse's employer, the Celotex Corporation, alleging Jesse had been injured as a result of exposure to asbestos. The complaint alleged strict products liability and negligence claims against various mining companies that supplied asbestos fiber to Celotex. Defendant Carey Canada, Inc. ("Carey Canada") was the sole nonsettling mining company at the time of trial.

Prior to the commencement of trial, the district court determined that it would try two asbestos cases concurrently and select the juries for both cases at the same time from one pool. The cases were similar in that both involved plaintiffs that had worked at Celotex and alleged asbestosis, and both cases involved the same witnesses.

Under the selection process, a challenge for cause would remove a potential juror from consideration for both juries; however, a peremptory challenge exercised during the first selection did not remove a potential juror from consideration for the second jury. There were separate numbers of peremptories for each case and those numbers were equal. Carey Canada contends that this method of selection required it to reserve two peremptory challenges for the same prospective juror thereby inhibiting its right to exercise its challenges.

## II.

The issue is whether the decision to use one pool of potential jurors for both cases constitutes a procedurally defective jury selection process.[2] Although defendant argues

---

[*] The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. Jesse Mills died during the pendency of this lawsuit, and pursuant to Rule 45(a) of the Federal Rules of Appellate Procedure, Mary Ann Mills moved for and was granted leave to substitute herself, as Executrix of the Estate of Jesse Mills, for cross-appellant, Jesse Mills.

2. If this challenge is viewed as a disguised complaint that the defendant was entitled to additional challenges, it fails as a basis for reversal of the district court. One who does not exercise all of his peremptory challenges cannot assign as error the court's refusal to allow a greater number. *Connecticut Mut. Life Ins. Co. v. Hillmon*, 188 U.S. 208, 23 S.Ct. 294, 47 L.Ed. 446 (1903). Because Carey Canada had two peremptory chal-

that any juror struck from the first panel should have been struck from the second automatically, there is no basis in law for such a holding. "Traditionally, a wide latitude of discretion is accorded the trial court in the selection of jurors." *United States v. Anderson,* 562 F.2d 394, 396 (6th Cir.1977) (citations omitted). We hold that the district court did not abuse its discretion here.

■ A process similar to the one used here was upheld in *United States v. Resto,* 824 F.2d 210 (2d Cir.1987). In *Resto,* there was a joint voir dire of the entire panel, followed by jury selection for two narcotics cases. During the first selection, the defense exercised eleven peremptory challenges and the prosecution used six. The same number of peremptory challenges were permitted to each side during the second panel selection. Nevertheless, the second selection resulted in a jury which included five of the individuals struck from the first panel. The Second Circuit, unpersuaded that the procedure improperly diluted the defendant's right to exercise his challenges, reasoned that the system employed did not quantitatively differ from the typical system, in which jurors who have been peremptorily challenged in one case go back into the pool and may again be selected for voir dire in another case. Under either procedure, the defense counsel selects jurors from a group that possibly includes individuals previously challenged. Merely because a defendant must face a certain number of previously excused jurors does not constitute a restriction on his ability to challenge. *Id.* at 213.

We find this analysis persuasive. Defendant was free to exercise its peremptory challenges as it saw fit. The exercise of peremptory challenges is a relative system and a potential juror might be struck in the first selection because he is viewed as inferior to the next potential juror, but retained in the second selection because he is viewed as superior to the next potential juror. Defendant chose not to exercise all of its available peremptory challenges; two strikes re-

mained at the time the second jury was seated. Further, when the second jury was seated, three potential jurors remained available for selection that had not been seated in the box or challenged in the first panel selection. None of the jurors struck from the first panel were seated on the second jury. Neither the law nor the facts support a finding that the district court impermissibly interfered with defendant's use of its peremptory challenges.[3] Accordingly, we affirm on this issue and turn to the issue presented in the cross-appeal.

### III.

Shortly before trial, plaintiffs entered into a settlement with the Manville Corporation Asbestos Disease Compensation Fund ("Manville Fund"), a trust created as a result of the Johns–Manville Corporation bankruptcy proceeding, in the amount of $20,000, forty percent ($8,000) to be paid within ninety days and the balance of sixty percent ($12,000), to be paid in no more than five years, with no interest accumulating on the payment. Recognizing that some offset to the jury verdict was needed to account for their settlement, plaintiffs requested that the district court reduce the sixty percent future payment to present value, and that the resulting present worth be used as an offset to the $140,000 verdict awarded by the jury to Jesse Mills.

Carey Canada opposed any reduction to present worth, claiming that because the agreement provided for payment *within* five years, the actual time payment would be made was unknown. Thus, it concluded that, given the speculative nature of the time for payment, a reduction of the settlement to present value would constitute a punishment. If the $12,000 is reduced to present value before setoff, plaintiffs would receive a windfall if the Manville Fund paid before the payment date used to calculate present value, an event entirely possible under the terms of the settlement agreement.

---

lenges remaining at the time the second jury was seated, it is precluded from appealing on this basis.

**3.** We deny Mills' request for costs on Carey Canada's appeal pursuant to Fed.R.App.P. 38 as we do not find defendant's appeal frivolous.

The district court, adopting the defendant's view, reduced the verdict dollar-for-dollar by the amount of the Manville Fund's promised future payment.

## IV.

■ The issue we must decide is the proper application of the sixty percent future payment to the $140,000 jury award. A legal issue is presented and the de novo standard of review applies. *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir.), *cert. denied*, 488 U.S. 941, 946, 109 S.Ct. 363, 377, 102 L.Ed.2d 353, 365 (1988). In a diversity action, we must decide the issues of interpretation in accordance with Ohio law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938). Where the state supreme court has not spoken, our task is to discern how that court would respond if confronted with the issue. *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985).

■ Initially, we turn to Ohio Rev.Code Ann. § 2307.32(F) (Anderson 1988), which allows for the reduction of a judgment in the amount paid by other tortfeasors in exchange for plaintiff's release or a covenant not to sue. The statute provides as follows: '

F) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one or two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:

(1) the release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it *reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it,* whichever is the greater....

Ohio Rev.Code Ann. § 2307.32(F)(1) (emphasis added). The statute provides for setoff but provides no guidance in situations such as the one presented here. Nor has the Ohio

Supreme Court addressed the issue before us, however, it has provided some guidance as to the purpose underlying the statute. First, it has stated that the statute was not enacted to prevent a joint tortfeasor from paying more than his fair share but rather to prevent a windfall to plaintiff. *Ziegler v. Wendel Poultry Serv. Inc.*, 67 Ohio St.3d 10, 17, 615 N.E.2d 1022, 1030 (1993). Secondly, the *Ziegler* court refused to adopt an "overly technical" reading of the statute in holding that no judicial determination of liability was needed for a settling defendant to be considered a joint tortfeasor under the statute. *Id.* 67 Ohio St.3d at 17, 615 N.E.2d at 1030. Further, we know that Ohio law favors dispute resolution through the process of compromise and settlement. *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 69, 567 N.E.2d 1291, 1302 (1991).

The sole decision from a lower court addressing setoff of future settlement payments determined that the statute governed the outcome and setoff the present value rather than the gross amount of the settlement. In *Cline v. GAF Corp.*, No. 90–J–38, 1991 WL 54822 (Ohio App. April 11, 1991) (unpublished),[4] the court held that under the terms of a settlement between the plaintiffs and the Manville Fund, the present value of the fixed future payment from the Manville Fund should be applied as a setoff pursuant to § 2307.32(F)(1). The settlement terms were that forty percent of the settlement was to be paid in the year 2004, sixty per cent in 2009, with no interest on the amount. The appellate court found the trial court's refusal to reduce the future payments to present value because the date of future payments was too uncertain was a determination unsupported by the evidence. *Id.* at *1. The *Cline* court further held that "[i]n all fairness as to amount, it should be calculated at present day value." *Id.* at *1.

The facts in *Cline*, although similar, are not dispositive inasmuch as the time of payment was specified, as "in the year 2004." Here, the settlement stated nothing more certain than payment would be made "in no.

---

**4.** Rule 2 of the Ohio Supreme Court Rules for the Reporting of Opinions imposes restrictions and limitations on the use of unpublished opin-ions. Here, in accordance with the rule, the opinion is not considered controlling.

more than five years." Accordingly, a reduction of the Manville Fund's future payments to their present value is impossible in the present case. Here, uncertainty arises because an exact date for repayment cannot be determined, and it is compounded by pending bankruptcy litigation and the potential unavailability of funds for repayment. Although we discern from *Cline*, that discounting may be applied to certain structured settlements, the facts here prevent us from reaching the same result.

As previously noted, the Ohio Supreme Court has stated that the purpose of the statute is not to protect a joint tortfeasor from paying more than his share. Under common law, the plaintiff becomes entitled to the full amount of a judgment at the time the verdict is entered. Here, Jesse Mills obtained a judgment of $140,000 and was immediately entitled to recover that amount. Because a plaintiff is not entitled to recover more than his full damages, *Hutchinson v. Rubel Baking Co.*, 34 N.E.2d 472 (Ohio App. 1939), in situations such as the one here, unless credit is given for a settlement, a plaintiff would recover more damages than he suffered. Conversely, if Carey Canada deducts the full amount of the Manville Fund's future payment it will profit to the extent of the time-value of that payment and will have shifted the risk of the Manville Fund's insolvency to the plaintiffs. Thus, Carey Canada and not plaintiff would receive a windfall. Neither the statute nor common law condones such a result. Therefore, we hold that Carey Canada must pay the full amount of the verdict and will receive a lien on any future payments to the plaintiffs under the settlement agreements. This holding will best prevent a windfall to either party. Further, a full payment of the verdict by Carey Canada with an accompanying assignment of the settlement rights from the plaintiff maximizes recovery to the plaintiff and encourages settlements, an outcome to be promoted by the courts.

Plaintiff has agreed to assign Carey Canada her right to the future payment of $12,000. Under the doctrine of equitable liens, this promise to assign creates an equitable lien on the property. *See Syring v. M.A.*

*Sartorious*, 57 O.O.2d 477, 28 Ohio App.2d 308, 277 N.E.2d 457 (1971). In discussing the doctrine of equitable liens, the *Syring* court stated that an agreement to assign property,

not yet in existence, or in the ownership of the party making the contract, *or property to be acquired in the future*, does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract.

*Id.* 57 O.O.2d 477, 28 Ohio App.2d at 308, 277 N.E.2d at 458. This lien, imposed by a court to prevent the unjust enrichment of plaintiff, precludes any possibility that plaintiff could receive a double recovery and makes the joint and severally liable defendant bear the consequences of the verdict, the risk of nonpayment of a settling party, and forecloses the opportunity for the defendant to benefit from the settlement agreement.

Accordingly, we **AFFIRM** the jury selection procedure employed by the district court and **REMAND** to the district court for **MODIFICATION** of the judgment in accordance with this opinion.