RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0360P (6th Cir.)
File Name: 03a0360p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMWAY CORPORATION,
      *Plaintiff-Appellant,*

    *v.*

THE PROCTER & GAMBLE
COMPANY; PROCTER &
GAMBLE DISTRIBUTING
COMPANY; DINSMORE &
SHOHL, LLP,
      *Defendants-Appellees,*

SIDNEY SCHWARTZ; KENNETH
LOWNDES,
      *Defendants.*

No. 01-2561

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00726—Robert Holmes Bell, Chief District Judge.

Argued: June 12, 2003

Decided and Filed: October 8, 2003

Before: BATCHELDER and CLAY, Circuit Judges;
SCHWARZER, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Charles L. Babcock, JACKSON WALKER, Houston, Texas, for Appellant. Daniel J. Stephenson, DYKEMA GOSSETT, Ann Arbor, Michigan, Stephen M. Shapiro, MAYER, BROWN, ROWE & MAW, Chicago, Illinois, for Appellees. **ON BRIEF:** Charles L. Babcock, David T. Moran, JACKSON WALKER, Houston, Texas, J. A. Cragwall, Jr., WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, Jack C. Berenzweig, James P. Sobieraj, BRINKS, HOFER, GILSON & LIONE, Chicago, Illinois, for Appellant. Daniel J. Stephenson, Michael P. Farrell, DYKEMA GOSSETT, Ann Arbor, Michigan, Kathleen McCree Lewis, Donald S. Young, DYKEMA GOSSETT, Detroit, Michigan, Eric C. Lund, DYKEMA GOSSETT, Grand Rapids, Michigan, Stephen M. Shapiro, MAYER, BROWN, ROWE & MAW, Chicago, Illinois, Stanley M. Chesley, Fay E. Stilz, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, Ohio, John M. Kunst, Jr., John W. Beatty, Brian S. Sullivan, DINSMORE & SHOHL, Cincinnati, Ohio, John M. DeVries, MIKA, MEYERS, BECKETT & JONES, Grand Rapids, Michigan, for Appellees. David L. Marburger, BAKER & HOSTETLER, Cleveland, Ohio, for Amici Curiae.

    BATCHELDER, J., delivered the opinion of the court, in which CLAY, J., joined. SCHWARZER, D. J. (pp. 17-21), delivered a separate concurring opinion.

_____

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Plaintiff Amway Corporation ("Amway") appeals from the district court's order granting summary judgment in favor of defendants The Procter and Gamble Company, The Procter and Gamble Distributing Company (collectively "P&G"), and the law firm of Dinsmore & Shohl ("Dinsmore") (P&G and Dinsmore collectively "Appellees"), in Amway's diversity action raising a Michigan state-law claim of "tortious interference with contract and with actual and prospective business relations," over the publication on the internet of an allegedly defamatory complaint filed by P&G in federal court. Following the close of extensive discovery in this corporate grudge match, which included the depositions of some eighty witnesses, the district court found that there was no evidence of a conspiracy between the Appellees and the other defendants to publish the complaint; that Amway had failed to show that the Appellees acted with actual malice; and, in the alternative, that the Appellees' actions were protected by Michigan's "fair reporting privilege." On appeal, Amway argues that, because the Appellees engaged in commercial speech, Amway does not need to prove actual malice in this case; that questions of material fact exist as to the existence of a conspiracy; and that Michigan's reporting privilege for public documents does not protect parties such as P&G and Dinsmore who participated in both the filing of the documents in a court proceeding and the publication of those court documents on the internet. Because we find that the Michigan fair reporting privilege does apply to the Appellees' presumed publication of public court documents on the internet, we will affirm the judgment of the district court.

## PROCEDURAL HISTORY

This case represents the third lawsuit in what the district court below correctly described as "a long history of corporate warfare between Amway and P&G." Amway originally brought this action against P&G, alleging tortious interference with business relations, after Sidney Schwartz ("Schwartz"), the creator and editor of an anti-Amway website entitled *Amway: The Untold Story*, published a complaint filed by P&G against Amway in a Texas federal district court, alleging, among other things, that Amway operates as an illegal pyramid scheme. Amway amended its complaint to add Dinsmore, Schwartz, and Kenneth Lowndes ("Lowndes") as defendants.

P&G, Dinsmore, and Schwartz moved for summary judgment, arguing that the website was protected speech; that Amway was a public figure and needed to prove actual malice; that there was no evidence that the defendant's actions interfered with any of Amway's business relationships; and that Amway could not prove the existence of a conspiracy among the defendants. Amway filed a 119-page brief in opposition to the motion, with more than 200 exhibits, arguing that sufficient evidence existed for a reasonable trier of fact to find in Amway's favor. The district court, who had jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332, entered an Order and Partial Judgment granting Appellees' motions for summary judgment, but denied Schwartz's motion after finding him to be in a "completely different posture" than P&G and Dinsmore. Amway and Schwartz subsequently "settled their differences" and entered into a stipulation dismissing all claims and counterclaims between them. The district court made its summary judgment order final by entering a default judgment against Lowndes, who was the last defendant remaining before the district court. Amway timely appealed "the Order and Partial Judgment and all prior rulings in this action," as well as an order denying its motion "to supplement the record

in opposition to Defendant's summary judgment motions." This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## FACTUAL BACKGROUND

Recitation of the extensive and hate-filled history between P&G[1] and Amway[2] would take a writing as long as both the Old and New Testaments and involve at least one of the Good Book's more prominent players. Although each side would likely argue, if given the chance, that its opponent was in the garden advising the serpent when Eve took her first bite of the apple, for our purposes we need only go back to the 1970s and Satan's rumored more recent activity with and interest in soap products.

For more than twenty years, rumors of a relationship between Lucifer and the soap manufacturer P&G—some spread by Amway's distributors—have circled the globe, dogging P&G like a hound of hell "despite every effort to eliminate [the rumors] through both public relations and litigation." *See Procter & Gamble Co. v. Haugen*, 222 F.3d 1262, 1267-69 (10th Cir. 2000) ("*Haugen I*").[3] The 1990s and the widespread use of the internet brought a resurgence of

the rumor throughout the world. Following this new "outbreak," P&G learned that Randy Haugen, an Amway distributor in Utah, had broadcast an audio version of the rumor via Amway's internal business communications system in 1995. In 1996, P&G brought suit against Haugen and Amway in the Federal District Court of Utah, *Procter & Gamble Co. v. Haugen*, No. 1:95-CV-0094, 1998 U.S. Dist. LEXIS 22984 (D. Utah Sept. 4, 1998), "claiming that as a result of the subject message and other similar missives disseminated by defendants, P&G lost customers concerned about supporting Satan through their purchase of P&G products." *Haugen I*, 222 F.3d at 1269. The district court granted Amway's motion for summary judgment, finding that the message did not relate to qualities or characteristics of P&G's products and, therefore, the claim fell outside the ambit of the Lanham Act. *Id*. at 1267. The Tenth Circuit agreed with the district court's holding, but nonetheless reversed the district court, deciding that the lower court should also look at whether the subject message was clearly related to P&G's "commercial activities," a question the appellate court admitted P&G failed properly to raise below. *Id*. at 1272. On remand, the district court dismissed all of P&G's claims that remained. *Procter & Gamble Co. v. Haugen*, 158 F. Supp. 2d 1286 (D. Utah 2001), and the Tenth Circuit affirmed. *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121 (10th Cir. 2003) (*"Haugen II"*).

While searching for information on the Amway Corporation during the prosecution of the Utah suit, an attorney at Dinsmore who was representing P&G in that action discovered the website created and maintained by Schwartz, a self-described "long-time Amway opponent." The website contained extensive information and documentation on Amway. Schwartz had maintained his site for eight months and accumulated thousands of pages of news articles, emails, and court documents from cases filed against Amway. In October of 1996, Dinsmore attorneys met with Schwartz at his Oregon home and retained him as a "non-

---

[1] P&G manufacturers and distributes numerous products for personal care, household use, and consumption, including detergents, cosmetics, and cleaning agents.

[2] Amway also sells numerous consumer products that are in direct competition with P&G products. Amway sells through a network of distributors, who in turn sell the products to other distributors and consumers.

[3] The most common version of the rumor involves P&G's President's appearing on a contemporary television talk show, from Merv Griffin to Oprah Winfrey, and confessing that profits from P&G go to support the Church of Satan.

testifying consultant," to assist Dinsmore in "obtaining evidence and information about Amway that might be useful in the Utah litigation, and to provide leads concerning other potential sources of such evidence."[4]    To aid Schwartz's ability to assist in the Utah proceedings, Dinsmore provided Schwartz with copies of some of the filings in the Utah case, as well as copies of public filings in two other cases: *Cairns v. Amway Corp.*, No. C-1-84-0783 (S.D. Ohio 1984), and *Setzer v. Amway Corp.*, No. 6:86-1898-3 (D.S.C. 1986).

P&G discovered in the course of the Utah litigation that Haugen's dissemination of the rumor of P&G's satanic connections extended into Texas. P&G eventually brought suit in Texas, alleging claims almost identical to the claims brought in the Utah case, and also claiming fraud and specific violations of the RICO Act stemming from Amway's allegedly illegal pyramid structure. *Procter & Gamble Co. v. Amway Corp.*, 80 F. Supp. 2d 639 (S.D. Tex. 1999).[5]    The Texas district court dismissed a majority of P&G's claims on res judicata grounds following the dismissal of the factually similar claims by the Utah district court. The Texas district court dismissed the remaining claims on several other grounds, including standing and the expiration of state statutes of limitation. Although the Fifth Circuit affirmed part of the district court's dismissal of P&G's claims, the circuit court reversed a majority of the district court's

---

[4]Dinsmore retained Schwartz from November, 1996, through January, 1998, at a rate of $25.00 per hour for his time, and they reimbursed him for any copying costs. In total, P&G, through Dinsmore, paid Schwartz $2,704.11 before terminating the relationship.

[5]Over the years, Amway has also suffered from allegations that, because of its corporate structure and distributor network, Amway operates as an illegal pyramid scheme. In 1979, in response to these allegations, and following a four-year investigation and an administrative trial, the Federal Trade Commission determined that Amway was not an illegal pyramid. *In re Amway*, 93 F.T.C. 618, 631, 716-17 (1979).

holding, including the judgment based upon res judicata, the dismissal of P&G's Lanham Act claims, and the dismissal of P&G's civil RICO claims. *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 567 (5th Cir. 2001). It appears from the record that the remaining claims in this case were scheduled for trial in January of 2003, but it is unclear from the parties' briefs whether there has been any conclusion to the proceedings.

At some point after P&G filed its lawsuit in Texas, Schwartz asked Dinsmore for a copy of the Texas complaint. After Dinsmore refused to supply Schwartz with any documents filed in the Texas litigation, Schwartz obtained a copy of the complaint on his own and billed Dinsmore for his copying expenses.[6]    Schwartz eventually posted the entirety of some of the documents from the earlier cases—including the *Setzer* complaint—that Dinsmore had provided him, as well as the Texas complaint he had obtained on his own.

In the present action, Amway identified ninety-nine statements published on Schwartz's website that it claims are falsehoods. Of those, eighteen were attributable to the Appellees. These eighteen statements include sixteen paragraphs in the Texas complaint, involving allegations that Amway is an illegal pyramid scheme and that Amway violated the RICO Act, and two statements in the complaint filed in the *Setzer* case, in which neither P&G nor Dinsmore was involved. Amway concedes that both complaints are public documents filed in a federal district court and available to the public.

---

[6]Schwartz states in his deposition that P&G agreed to reimburse his copying expense for the Texas complaint, and that he prepared an invoice that he sent to Dinsmore. In the record, an attorney for Dinsmore admits receiving the invoice but claims payment was never authorized. The record contains no definitive proof of whether Schwartz was in fact reimbursed. For summary judgment purposes, we will assume Dinsmore paid the invoice.

## ANALYSIS

*Standard of Review*

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1303 (6th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

*Amway's Claim*

Amway asserts that Schwartz and Appellees conspired to disrupt the business structure and relationships of Amway by disseminating untrue allegations. Similar to P&G's complaint against the Plaintiff, Amway's complaint here claims that the Appellees' conduct cost Amway business and

was undertaken with a malicious and manifest disregard for the rights of Amway. The district court, clearly frustrated with both parties, narrowed its focus in this case down to what it believed to be the key issue before it—Amway's effort to recover damages for a speech tort committed by Appellees. The court's opinion correctly focuses on the fact that Amway's only allegation involves the Appellees' action of giving the documents to Schwartz with the intent that the documents would be posted on the internet. In finding for the Appellees, the court made several observations: (1) the evidence does not support a finding of a conspiracy; (2) not every document allegedly provided by the Defendants is at issue in the case; (3) Amway attributes only eighteen allegedly defamatory statements to the Defendants; (4) all the posted documents were publically available; (5) none of the allegedly defamatory statements is new; (6) Amway is a public figure; and (7) the suit is really about business competition and bad blood rather than about the spread of rumors or the published attacks. The court went on to find that the relationship between Schwartz and the Appellees was not so irregular as to require an inference of a conspiracy under Michigan law, and Amway failed to provide any actual evidence of an agreement between the parties indicating their desire to interfere with Amway's business relations. Additionally, the court found that the speech alleged to be defamatory was privileged and subject to First Amendment protections, and that Amway—as a public figure—failed to prove not only that the speech was false, but that the Defendants acted with malice or with the knowledge that their statements were false or made with reckless disregard of whether they were false. Finally, the district court granted the Defendants' motion for summary judgment by applying Michigan's fair reporting privilege, which protects individuals who fairly and accurately report information that substantially represents matters contained in court records.

*Michigan Fair Reporting Privilege*

Under the Michigan statute:

Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report. This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, which was not a part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body.

MCLA § 600.2911(3).[7] Amway does not dispute that, under this law, a verbatim reproduction of a public court document would be privileged. Rather, Amway argues that P&G and Dinsmore—who created the complaint in the Texas litigation

---

[7]First Amendment protections apply in a tortious interference action when the action complained of was defamatory speech. It is therefore consistent to apply the fair reporting privilege to a claim for torious interference that is based upon defamatory speech. *See Meyer v. Hubbell*, 324 N.W.2d 139, 144 (Mich. App. 1982) (noting that in a claim for defamation, the absolute judicial proceeding privilege would also apply to a related claim of tortious interference).

and participated in the publication of the documents on Schwartz's website—are not protected by the privilege.[8]

In support of its position, Amway cites *Park v. Detroit Free Press Co.*, 40 N.W. 731 (Mich. 1888), where the Michigan Supreme Court said, "[i]f pleadings and other documents can be published to the world by any one who gets access to them, no more effectual way of doing malicious mischief with impunity could be devised than filing papers containing false and scurrilous charges, and getting those printed as news." *Id.* at 734. The *Park* decision is consistent with the reporting privilege contained in the Second Restatement of Torts. Section 611 of the Second Restatement provides:

The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

RESTATEMENT (SECOND) OF TORTS § 611. This privilege, however, is not absolute. Similar to the court's language in *Park*, Comment c provides, in relevant part:

A person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not. Nor may he confer the privilege upon a third person, even a member of the communications media, by making the original statement under a collusive arrangement with that person for the purpose of conferring the privilege upon him.

---

[8]For purposes of this argument, we assume the Defendants "published" the documents on Schwartz's website.

RESTATEMENT (SECOND) OF TORTS § 611 cmt. c. If the publication involves some form of judicial proceeding, there must be official action in the proceeding before one can invoke the privilege:

A report of a judicial proceeding implies that some official action has been taken by the officer or body whose proceedings are thus reported. The publication, therefore, of the contents of preliminary pleadings such as a complaint or petition, before any judicial action has been taken is not within the rule stated in this Section. An important reason for this position has been to prevent implementation of a scheme to file a complaint for the purpose of establishing a privilege to publicize its content and then dropping the action. (See Comment *c*). It is not necessary, however, that a final disposition be made of the matter in question; it is enough that some judicial action has been taken so that, in the normal progress of the proceeding, a final decision will be rendered. So too, the fact that the proceedings are *ex parte* rather than *inter partes* is immaterial if the matter has come officially before the tribunal and action has been taken in reference to it.

RESTATEMENT (SECOND) OF TORTS § 611 cmt. e (emphasis in original). Although P&G did not withdraw its complaint in the Texas litigation after it was published on the website (indeed, P&G appears to have pursued that action well beyond the publication), Amway argues that Comment e still expresses a concern for the exact situation found in this case. Amway also relies upon a case from Illinois which applied the same type of fair reporting privilege and invoked the Second Restatement. In *Kurczaba v. Pollock*, 742 N.E.2d 425, 442-43 (Ill. App. Ct. 2000), the court held that the fair reporting privilege does not apply to a defendant who sought to confer the privilege upon himself by filing a complaint and then "reporting" the complaint to others.

Amway also turns to the grammatical structure of the statute. Specifically, Amway argues that the parallel use of two "contained in" clauses separated by "or," demonstrates two distinct categories that are in the disjunctive. Furthermore, Amway claims the clause "which was not part . . ." modifies the last antecedent and not the former. *See Sun Valley Foods Co. v. Ward*, 596 N.W.2d 119, 123 (Mich. 1999) ("It is a general rule of grammar and of statutory construction that a modifying word or clause is confined solely to the last antecedent, unless a contrary intention appears."). Accordingly, under Amway's interpretation, the Defendants cannot find protection under the fair reporting privilege. We are not persuaded.

The exception to the privilege reads:

This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, which was not a part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body.

MCLA § 600.2911(3). The statute excepts from the privilege libels that are not a part of the public and official proceeding or governmental notice, written record or record generally available to the public. These libels are of two kinds: (1) a libel which is "contained in a matter added by a person concerned in the publication," or (2) a libel which is "contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or

action of a public body." Contrary to Amway's belief, "or" in this statutory section is used as a coordinating conjunction to connect the two kinds of libel, *see* HARBRACE COLLEGE HANDBOOK 16 (John C. Hodges, et al. eds., rev. 12th ed. 1994) (coordinating conjunctions, including "or," join two clauses of equal grammatical rank); and both kinds of libel are plainly modified by the clause "which was not a part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body," and both are plainly included in the exception. Assuming that any allegations in the Texas complaint or the *Setzer* complaint—or both—were libelous, the libel was included in the actual complaint and the Appellees did not add any statements, let alone false statements, when they supposedly published the complaint on the internet. Accordingly, we find that Michigan's fair reporting privilege applies to the publication of the entire complaints on Schwartz's website, and no exception to the privilege applies to the Appellees' conduct complained of here.

Because we find that the plain language of the statute clearly directs our decision, we find no reason to consider the Second Restatement. *See Rouch v. Enquirer &amp; News of Battle Creek*, 398 N.W.2d 245, 250 (Mich. 1986) (noting that the Second Restatement is not helpful in interpreting Michigan's fair reporting statute).[9] Generally speaking, a party's publication of any actual court filing or statement made in a judicial proceeding is privileged because the public has a legitimate interest in accessing and viewing that type of

---

[9]The Michigan legislature amended the fair reporting statute following the state supreme court's decision in *Rouch*, addressing what the legislature felt was the supreme court's too narrow definition of "official proceeding." *See Northland Wheels Roller Skating Ctr. v. Detroit Free Press*, 539 N.W.2d 774, 778 n.4 (Mich. App. Ct. 1995). The Michigan Supreme Court's decision not to use the Second Restatement remains applicable to our interpretation of the amended statute.

information. Amway brings suit for injuries claimed under a state-created tort, but the state has seen fit to codify a general privilege and not to except from it the kind of conduct alleged in this case. The state has not, contrary to Amway's arguments, limited that privilege in a way that exposes the Defendants to liability.

Finally, we consider Amway's reliance upon *Park* misplaced. Court filings were not public records in Michigan when *Park* was decided more than one hundred years ago. *See In re Midland Pub. Co.*, 362 N.W.2d 580, 586 (Mich. 1985) (noting that the decision in *Park* was premised on the reasoning that pleadings in private actions were not public records).

Accordingly, we hold that the conduct of P&amp;G and Dinsmore was protected by the Michigan fair reporting privilege, and on that basis, we affirm the judgment of the district court dismissing this action. Having thus decided, we decline to address the commercial speech issues argued by the parties.

Amway and P&amp;G have each now prevailed against the other at the appellate level in the federal courts. Although no decision from this Court—or any other, we predict—will end the hatred these two corporate giants harbor for each other, we hope that they will consider the impact of their continuing legal battle on the scarce resources of the courts, and decide to concentrate their creative talents on the more traditional methods of gaining competitive advantage and declare a ceasefire in the judicial arena.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

———————————

## CONCURRENCE

———————————

WILLIAM W SCHWARZER, Senior District Judge, Concurring. The application of Michigan's Fair Reporting Statute, Michigan Compiled Laws § 600.2911(3) (2003),[1] to the facts of this case presents a question of first impression. Neither the Michigan Supreme Court nor any other court has issued a reported decision on the issue before us: whether the privilege applies to a party's publication of a complaint it has filed in court. Our task is to predict how the Michigan Supreme Court would decide the issue. *Mills v. GAF Corp.*, 20 F.3d 678, 681 (6th Cir. 1994).

In an early case, *Park v. Detroit Free Press Co.*, 40 N.W. 731 (Mich. 1888), the Supreme Court addressed the validity of a statute which limited the liability of newspapers for publication of defamatory matter in the absence of bad faith and upon a prompt retraction. In dictum, the court referred to testimony concerning the newspaper reporters' difficulty in getting access to the judges' files and added:

> One of the reasons why parties are privileged from suit for accusations made in the pleadings is that the pleadings are addressed to courts where the facts can be fairly tried, and to no other readers. If pleadings and other documents can be published to the world by any one who gets access to them, no more effectual way of doing malicious mischief with impunity could be devised than filing papers containing false and scurrilous charges, and getting those printed as news. The public have no rights to any information on private suits till they come up for public hearing or action in open court; and when

———————————

[1] Quoted at Op. 14, above.

any publication is made involving such matters, they posses no privilege . . . .

40 N.W. at 734.

The *Park* decision, an echo from a distant past, antedates the adoption of § 600.2911, which clearly recognized the public's "rights to . . . information on private suits" when they are filed. *See In re Midland Publ'g Co.*, 317 N.W.2d 284, 288 (Mich. 1982) (stating that "Michigan has long recognized a common-law right to access to public records."). Thus, *Park* sheds no light on the scope of the statutory privilege.

As originally enacted in 1931, § 600.2911(c) protected only[2] reporters, editors, publishers, or proprietors of newspapers. *Rouch v. Enquirer & News of Battle Creek*, 398 N.W.2d 245, 248 (Mich. 1987). Following that decision, in 1988 the statute was amended to significantly enlarge its scope. *See Northland Wheels Roller Skating Center, Inc. v. Detroit Free Press, Inc.*, 539 N.W.2d 774, 777 (Mich. App. 1995). Thus, as amended, it no longer was limited to "public and official proceeding[s]" but applied as well to reports of "matters of public record," and its protection extended to anyone against whom damages might be awarded in a libel action for a publication or broadcast, not simply members of the newspaper trade. While pre-amendment the statute would have afforded no protection to defendants in this case, the amendment plainly protects them for publishing a fair and true report of a matter of public record.

Amway contends nevertheless that defendants fall within the statute's exception for libel "which is contained in a

———————————

[2] It read, in relevant part: "No damages shall be awarded in any libel action brought against a reporter, editor, publisher, or proprietor of a newspaper for publication in it of a fair and true report of any public and official proceeding . . . ." *Rouch*, 398 N.W.2d at 248.

matter added by a person concerned in the publication."[3] It argues that defendants authored the defamatory statements in the complaints and, having arranged for their dissemination on the internet, were persons concerned in their publication. It argues further that the qualifying clause, limiting the exception to matter "which was not part of the public and official proceeding" applies only to the second part of the exception dealing with reports of official proceedings. The argument is unavailing. As the district court found, it was undisputed that all the documents defendants provided and that were published were publicly available court documents. Dist. Ct. Op., Jt. App. 652. These documents were verbatim copies of what was in the court files, and thus they were "accurate reports of matters of public record." *Id.* at 677, 680. And all of the allegedly defamatory statements came from these complaints in the court files. *Id.* at 652.

Amway contends that the publication of the complaints, though accurate, did not qualify as a fair and true report because it failed to present Amway's side of the matters alleged in the complaints. Moreover, Amway charges that defendants abused the privilege because they acted to further their anti-Amway motives. The statute cannot be read to require the publisher to give equal time to opponents of what is in the public record. To make the reporting privilege conditional on a balanced presentation, as Amway argues,

---

[3] The exception reads:

This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public or act or action of a public body, which was not part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public or act or action of a public body.

would eviscerate it. What the statute requires is that matters of public record be reported fairly and truthfully, i.e., that the report is not "so edited and deleted as to misrepresent the proceeding and thus be misleading." *See Doe v. Doe*, 941 F.2d 280, 289 (5th Cir. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 611 cmt. f). So long as those conditions are met, motive is irrelevant. *Stablein v. Schuster*, 455 N.W.2d 315, 317 (Mich. App. 1990) (stating that "the statute makes it clear that defendant's motivation is irrelevant if a fair and true report is made of the proceeding.").

Amway further contends that defendants are excluded from the privilege under the RESTATEMENT (SECOND) OF TORTS. It cites § 611 comment c, which states that a person cannot confer the privilege upon himself by making the original defamatory publication himself and then reporting to other people what it had stated, even if the original publication was privileged. It also cites comment e, stating that "[t]he publication . . . of the contents of preliminary pleadings such as a complaint or petition, before any judicial action has been taken is not within the rule stated in this Section."[4] The argument is inapposite. Defendants claim the fair reporting privilege under § 600.2911(3), not under the Restatement. Moreover, because the Michigan statute and the Restatement are not coextensive, citation to the Restatement "is not helpful in [the court's] effort to interpret the statute." *Rouch*, 398 N.W.2d at 250 (stating that the Restatement's "official action" privilege is broader than the statute's privilege to report "public and official proceedings.").[5]

---

[4] Quoted at 13, above.

[5] For that reason, cases decided under the Restatement's rule are not relevant. *See*, *e.g.*, *Kurczaba v. Pollock*, 742 N.E.2d 245, 442-43 (Ill. App. Ct. 2000).

Amway's contention that the fair reporting privilege protects only third parties is thus at odds with the plain language of the statute and contrary to common sense. Suppose the *Wall Street Journal*'s reporter copies a complaint on file and then reports on it in a story. The privilege would apply to him. But suppose that instead he writes his story on the basis of the complaint given to him by the plaintiff after it has been filed. The reporter would still be entitled to the privilege. It makes no sense to extend it to him but to subject the plaintiff to liability for giving him the complaint.[6] Or suppose the plaintiff, or perhaps her lawyer, is interviewed on a news program and responds with a fair and true summary of the complaint's allegations. Surely it makes no sense to interpret the statute so as to extend the privilege to the interviewer but not to the interviewee.

For these reasons, I join in the affirmance of the judgment.

---

[6] See *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 239 (Tex. App. 2000) (stating that "[t]he harm resulting to a defamed party from delivery of pleadings in a lawsuit to the news media could demonstrably be no greater than if the news media found the pleadings on their own.").